John E. ROUSE, Appellant (Defendant),

v.

Ernest W. MUNROE, Appellee (Plaintiff).

No. 5760.

Supreme Court of Wyoming.

Feb. 10, 1983.

Richard F. Pickett of Loomis, Lazear, Wilson & Pickett, Cheyenne, for appellant.

Harold M. Johnson of Johnson, Noecker & Noecker, Rawlins, for appellee.

Before ROONEY, C.J.*, and RAPER, THOMAS, ROSE ** and BROWN, JJ.

ROSE, Justice.

In this appeal we are asked to review the district court's construction of an easement owned by appellant John Rouse. The ease-

---

\* Became Chief Justice on January 1, 1983.     \*\* Chief Justice at time of oral argument.

ment has as its purpose the maintaining of a stock-watering reservoir on a portion of appellee Ernest W. Munroe's property. In the district court proceeding Munroe sued Rouse, alleging that water in the reservoir was inundating more land than authorized by the easement. Following the trial, the district judge decided that the terms of the easement only permitted the reservoir to encompass ten acres of appellee's property. A judgment was therefore entered enjoining the appellant from storing a quantity of water in the reservoir which was in excess of that which was required to inundate ten acres of appellee's land. No damages were awarded.

Appellant Rouse now asks this court to review the above ruling and to hold that the trial judge erred in construing the terms of the easement. In doing so, he raises one issue for review:

1. Was the district court correct in holding that the easement in question only permitted the appellant to inundate ten acres of appellee's property when the parties to the easement had also provided that the high-water line was to be 17 feet above the creek bottom?

We are of the opinion that the intention of the parties was that the high-water line was to control the contour of the easement, and we will reverse.

## FACTS

Appellant Rouse approached several ranchowners in Carbon County in 1955 for the purpose of acquiring easements for the construction and maintenance of a stock-watering reservoir. Before contacting these landowners, Mr. Rouse had filed an application with the Wyoming State Engineer for the purpose of acquiring a permit to construct a reservoir on Beaver Creek. Attached to the application was a map locating the proposed structure and representing that the high-water line would be 17 feet above the creek bottom at the dam site with a reservoir of a capacity for 162.9 acre feet of water. The application was granted by the State Engineer on October 13, 1955.

According to Rouse's testimony, the application was a material consideration in negotiating the easement. One of the landowners granting an easement was Mr. Hoyt S. Parkinson. The easement, entered into between Parkinson and appellant on October 8, 1955, provided in part:

"WHEREAS, the Grantee is desirous of constructing a dam to be known as Rouse No. 1 Dam across Beaver Creek in the NE¼ NE¼ of Section 6, in Township 14 North, Range 82 West of the 6th P.M., in the County of Carbon, State of Wyoming, for the purpose of a stock water reservoir and in accordance with application dated September 26, 1955 which is on file in the State Engineer's Office of the State of Wyoming, which said dam will cause water in the reservoir to be upon a portion of the land of said Grantee herein above described, estimated at approximately 10 acres, more or less.

"NOW, THEREFORE, for and in consideration of the sum of Ten Dollars ($10.00) and other valuable consideration, receipt whereof is hereby acknowledged, the Grantor does hereby grant to said Grantee, his heirs, administrators, executors, successors and assigns, an easement for 10 acres, more or less, in the SW¼ NW¼ of Section 5, in Township 14 North, Range 82 West of the 6th P.M., in the County of Carbon, State of Wyoming within the high water line contours of the stock water reservoir to be formed by the Rouse No. 1 Dam to be constructed across Beaver Creek in the NE¼ NE¼ of Section 6, in Township 14 North, Range 82 West of the 6th P.M., in the County of Carbon, State of Wyoming, in accordance with the application dated September 26, 1955 on file in the State Engineer's Office of the State of Wyoming.

"IT IS FURTHER AGREED by and between the said parties that the high water level of said dam will be seventeen (17) feet above the creek bottom at the dam site in Beaver Creek.

"IT IS FURTHER AGREED by and between the parties that this easement will not be in effect until the dam is complet-

ed, and said easement will cease in the event that the said dam in [sic] permanently abandoned."

Appellee Munroe purchased Parkinson's ranch in 1972, and at that time the reservoir was not filled because the dam had washed out in 1962. In 1977 the appellant reconstructed the dam, and as a result of a survey in 1978 appellee discovered that when filled to capacity the reservoir water inundated 19.08 acres of his property. Another survey was conducted in April of 1981, after appellant had cut off a section of the emergency spillway pipe, and the results showed that 15.2 acres of appellee's land were still inundated.

Upon discovery of these facts, appellee Munroe brought an action seeking to enjoin the appellant from flooding any more than ten acres of his land. The gravamen of the suit, derived from Munroe's position, is that the above-quoted portion of the Parkinson-Rouse easement provided that only ten acres of land could be inundated. Appellant counterclaimed with the contention that the easement permitted the reservoir to be filled to the level expressed in the application and that the acreage amount found in the document was only an estimate noted by the parties which was not controlling. Simply stated, appellant contended that the reservoir water could cover as much of appellee's property as necessary to maintain a level of 17 feet above the creek bottom at the dam site. As previously mentioned, the trial judge found in favor of appellee's position and appellant now asks us to construe the easement as he has suggested.

## DISCUSSION

There is no dispute in this case between the parties with respect to the fact that the easement burdens appellee Munroe's land. Rather, the sole question concerns the intention of the parties to the easement as to how much of the servient estate is to be burdened. In other words, all we must do in this case is determine the intent of the parties as embodied in the instrument, just as we are asked to do in any other case involving the construction of a contract.

Given the fact that this case is similar to other contract-construction cases, there are certain well-established rules for us to follow in reaching the ultimate issue. The basic rules are those we set out in *Amoco Production Company v. Stauffer Chemical Company of Wyoming,* Wyo., 612 P.2d 463, 465 (1980):

"Our basic purpose in construing or interpreting a contract is to determine the intention and understanding of the parties. *Fuchs v. Goe,* 62 Wyo. 134, 163 P.2d 783 (1945); *Shellhart v. Axford,* Wyo., 485 P.2d 1031 (1971); *Oregon Short Line Railroad Company v. Idaho Stockyards Company,* 12 Utah 2d 205, 364 P.2d 826 (1961). If the contract is in writing and the language is clear and unambiguous, the intention is to be secured from the words of the contract. *Pilcher v. Hamm,* Wyo., 351 P.2d 1041 (1960); *Fuchs v. Goe,* supra; *Hollabaugh v. Kolbet,* Wyo., 604 P.2d 1359 (1980); *Wyoming Bank and Trust Company v. Waugh,* Wyo., 606 P.2d 725 (1980). And the contract as a whole should be considered, with each part being read in light of all other parts. *Shepard v. Top Hat Land & Cattle Co.,* Wyo., 560 P.2d 730 (1977); *Rossi v. Percifield,* Wyo., 527 P.2d 819 (1974); *Shellhart v. Axford,* supra; *Quin Blair Enterprises, Inc. v. Julien Construction Company,* Wyo., 597 P.2d 945 (1979). The interpretation and construction is done by the court as a matter of law. *Hollabaugh v. Kolbet,* supra; *Bulis v. Wells,* Wyo., 565 P.2d 487 (1977); *Shepard v. Top Hat Land & Cattle Co.,* supra."

As a general rule, we look no further than the four corners of an instrument to determine the intent of the parties. However, this rule is only applicable where the language utilized clearly and unambiguously expresses the intent of the parties. Different rules are applicable where we perceive an ambiguity or double meaning present in the written instrument. Ambiguous contracts are agreements which, because of the language used, are obscure in their meaning. *Amoco Production Compa-*

*ny v. Stauffer Chemical Company of Wyoming,* 612 P.2d at 465; *Bulis v. Wells,* Wyo., 565 P.2d 487, 490 (1977). If, upon a reading of the questioned agreement, we perceive an ambiguity, then resort to extrinsic evidence is proper in order to fully determine the intent of the contracting parties. *Mountain Fuel Supply Company v. Central Engineering & Equipment Company,* Wyo., 611 P.2d 863 (1980). Our primary intent is always to give effect to the intention of the parties, *Quin Blair Enterprises, Inc. v. Julien Construction Co.,* Wyo., 597 P.2d 945 (1979), and with an ambiguous agreement we will look to all of the surrounding circumstances and extrinsic evidence introduced with respect to intent. *Peters Grazing Association v. Legerski,* Wyo., 544 P.2d 449 (1975), reh. denied 546 P.2d 189 (1976). Generally, the question of intent is one of law, and fact questions only arise when the language utilized is not clear on its face. *Goodwin v. Upper Crust of Wyoming, Inc.,* Wyo., 624 P.2d 1192 (1981).

The parties to this appeal both contend that the easement agreement is clear on its face and that the intent of the parties can be determined from within the four corners. With this contention we cannot agree. From our viewpoint, the language contained in the easement agreement can be read in two ways. First of all, the contract can be read to provide an easement for the construction and maintenance of a stock-watering reservoir with a capacity water level of 17 feet above the creek bottom at the dam site. From another point of view, the contract can be read to provide for an easement of ten acres of land for the purpose of inundating that area for maintenance of a stock-watering reservoir. Given this double meaning, we believe it is necessary to resort to extrinsic evidence in order to determine the actual intent of the contracting parties.

The evidence introduced by appellant in this case tends to reflect that the parties intended to enter into a contract providing for the construction and maintenance of a stock-watering reservoir with a storage capacity of 162.9 acre feet of water.

Appellant testified that the concern of both of the landowners was the establishment of an available supply of water, and that little concern was expressed over how much land would be inundated. In fact, he also testified that given the condition of Beaver Creek, the landowners were more than happy to have the water. Considering these facts in conjunction with the facts that the application and map were utilized in the negotiations—the contents of which were incorporated to some degree in the contract—we are of the opinion that the intention of Parkinson was to grant an easement to appellant for the construction of a reservoir on his property which would have a capacity of 162.9 acre feet with a high-water line of 17 feet above the creek bottom at the dam site.

Having reached this conclusion, we are also of the opinion that the utilization of the "10 acres, more or less" language by the parties was merely an estimation on their part of the amount of acreage that would be inundated. We find that the "more or less" language indicates that the amount of land to be inundated was not of the essence of the contract. *Overly v. Treasurer and Receiver General,* 344 Mass. 188, 181 N.E.2d 660 (1962); Annot., 1 A.L.R.2d 9, and cases contained therein. As is stated in 77 Am Jur 2d, Vendor and Purchaser, § 100, p. 285:

> " * * * The use of the words 'more or less' excludes the assumption of an exact number of acres and makes it clear that the precise dimensions of the property are not of the essence of the contract * * *."

In this case, the more precise description in the contract was the reference to the high-water line of the reservoir and the amount of storage capacity of the reservoir noted in the application.

Read together, the provisions of the contract contemplate the creation of an easement for the formation of a reservoir with a high-water line of 17 feet above the creek bottom at the dam site. Any reference to the acreage to be inundated was merely in the form of an estimation and,

under the evidence, we are convinced that the parties did not intend the same to be controlling. The intent of the parties was to provide for a source of stock water rather than to grant an easement for a specified number of acres.

Having come to these conclusions, we reject the trial judge's construction of the agreement and hold that the contract gives the appellant the right to inundate as much of appellee's land as is necessary to fill the reservoir to a level of 17 feet above the creek bottom at the dam site. This is the intention we derive from the evidence, and the agreement, with this interpretation, is binding upon the appellee.

Reversed.