Marie P. TIBBETS, a widow,
Appellant (Plaintiff),

v.

P & M PETROLEUM COMPANY,
Appellee (Defendant).

No. 87–117.

Supreme Court of Wyoming.

Oct. 28, 1987.

Charles E. Graves and Jane A. Villemez of Charles E. Graves & Associates, Cheyenne, for appellant.

Richard M. Davis, Jr. and Rebecca W. Thomson of Burgess & Davis, Sheridan, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

BROWN, Chief Justice.

In this case we are concerned with the interpretation of a road easement agreement between appellant Marie P. Tibbets and her husband Coyne C. Tibbets, deceased, as grantors, and appellee P & M Petroleum Company's predecessor in interest, Texaco, Inc., as grantee. Mrs. Tibbets appeals from the order and judgment of the trial court directing a verdict against her on her claim for trespass and from the court's order denying a new trial.

On appeal, Mrs. Tibbets urges the following issue, with which P & M essentially agrees:

"Whether the evidence adduced at trial of the contracting parties' intent precluded the court from directing a verdict in this contract-interpretation case."

We will affirm.

Mrs. Tibbets is the owner of a ranch located approximately twenty-five miles north of Leiter, Wyoming. A private roadway traverses the ranch property for approximately one and one-quarter miles to the Fence Creek Oil Field located outside the ranch. In the mid-1960's, oil companies began using this private road to reach this oil field.

In 1971, Texaco, Inc., mailed a road easement to the Tibbets for their signatures offering to compensate the Tibbets for its use of the road. The Tibbets, however, found the agreement they received from

Texaco, Inc., unfair, and to alleviate their concerns deleted portions of the agreement and inserted handwritten additions. In the agreement's first paragraph, the Tibbets deleted the words granting Texaco "the unconditional right and authority" to use the roadway, and inserted language requiring mutual agreement for such use as follows:

> "[T]he undersigned * * * grants unto TEXACO, Inc., a Delaware corporation, its legal representatives, successors or assigns, *with mutual agreement* to build, maintain and use a roadway across any part of the following described land in Sheridan County, State of Wyoming * * *." (Emphasis added.)

The Tibbets further altered the agreement to permit building, construction and maintenance of the roadway by Texaco "with mutual consent" rather than "at its election." It read:

> "It is understood and agreed that the said TEXACO, Inc. will construct and maintain all necessary cattle guards and may, *with mutual consent,* perform any other building, construction and maintenance of the road and bridges across the above described land considered by it to be necessary for free and clear passage across and upon said land. * * * " (Emphasis added.)

Finally, the Tibbets increased the minimum consideration for use of the roadway from $93.75 to $187.50 per year. The Tibbets then signed the altered road easement agreement on June 17, 1971, and returned it to Texaco, which accepted and also signed the agreement without change and began paying the specified consideration.

In 1977, P & M purchased Texaco's interest in the Fence Creek Oil Field and its interest in the road easement agreement with the Tibbets. In 1981, the Tibbets and P & M renegotiated the annual use fee, and P & M began paying the Tibbets $375 per year to use the roadway.

In 1983, Mrs. Tibbets sought to renegotiate the annual use fee to bring the payments in line with the higher fees paid by other oil companies to neighboring ranchers for use of the same roadway. P & M, however, did not agree to the increase in the annual easement fee requested by Mrs. Tibbets. She then placed "No Trespassing" signs on the road and notified P & M that unless the parties satisfactorily resolved the easement arrangement by September 1, 1985, continued use of the road by P & M would constitute trespass subject to a trespass fee of $100 per day. Following receipt of this notice, P & M continued to use the roadway easement without contacting Mrs. Tibbets, and she elected to bring an action in trespass for damages.

On January 22, 1987, a jury trial commenced, and at the close of the case, P & M moved for a directed verdict on Mrs. Tibbets' claim for trespass. On February 13, 1987, the court entered judgment in favor of P & M stating:

> " * * * [N]o reasonable person could disagree that the intent of the interlineation was solely to control the road and not the annual payment and that a directed verdict should be entered in favor of the Defendant on Plaintiff's claim for trespass; the Court further finds that the Agreement dated June 17, 1971, is a valid and binding agreement, and the terms 'mutual consent' and 'mutual agreement' as interlineated by the Tibbets do not mean that the consideration payable by Defendant to the Plaintiff is negotiable annually."

The trial court also ordered that P & M pay Mrs. Tibbets $560 for each of the years 1983, 1984, 1985 and 1986, and dismissed P & M's counterclaim for damages.[1] The trial court also denied Mrs. Tibbets' motion for new trial on March 17, 1987. This appeal followed.

We have often stated that when we construe a written agreement, we must derive the meaning of the instrument from its language if the terms are clear and unambiguous. *Wyoming Recreation Commission v. Hagar,* Wyo., 711 P.2d 402 (1985). When the language is clear, we look no further than the four corners of a contract to determine the intent of the par-

---

1. This portion of the judgment was not appealed.

ties. *Holst v. Guynn,* Wyo., 696 P.2d 632 (1985). If the terms are clear, then it falls within the province of the court to construe the instrument as a matter of law. *Nelson v. Nelson,* Wyo., 740 P.2d 939 (1987); and *Wyoming Recreation Commission v. Hagar,* supra.

Based on these standards, we hold the easement agreement to be clear and unambiguous, and that the directed verdict was proper. The easement agreement does not provide that the consideration payable by P & M to Mrs. Tibbets is negotiable annually. P & M was entitled to judgment as a matter of law.

█ We also note that the trial court allowed Mrs. Tibbets to testify in order that she might have the opportunity to fully develop her theory of the case. She now asserts that the trial court, in effect, determined that the agreement was ambiguous and that extrinsic evidence was necessary and admissible for proper interpretation. She relies on language in *Wangler v. Federer,* Wyo., 714 P.2d 1209, 1212 (1986), where we stated:

"' * * * Ambiguous contracts are agreements which, because of the language used, are obscure in their meaning. [Citations.] If upon a reading of the questioned agreement, we perceive an ambiguity, then resort to extrinsic evidence is proper in order to fully determine the intent of the contracting parties. * * * [W]ith an ambiguous agreement we will look to all of the surrounding circumstances and extrinsic evidence introduced with respect to intent. * * *' *Rouse v. Munroe,* Wyo., 658 P.2d 74, 77–78 (1983)."

Mrs. Tibbets contends that her testimony, taken in a light most favorable to her, raises a factual question as to the intent of the parties to create an agreement that is subject to renegotiation by the parties upon the request of either party. Consequently, she argues that a final decision in this matter should have been left solely to the jury's determination. We cannot agree.

The agreement presented here is not ambiguous. There was no need to hear any additional testimony in order to determine "intent." " * * * Generally, the question of intent is one of law, and fact questions only arise when the language utilized is not clear on its face. [Citation.]" *Rouse v. Munroe,* Wyo., 658 P.2d 74, 78 (1983). Mrs. Tibbets' testimony in fact strengthens the trial court's determination that the original intent *at the time the agreement was entered into* did not include an intent that the yearly fee be negotiable annually or at any time when either party felt it necessary. If any such intent did arise, it was unilateral and arose after the making of the road easement agreement.

█ We hold that the road easement agreement dated June 17, 1971, is a valid, unambiguous and binding agreement. Specifically, we hold that the terms "mutual consent" and "mutual agreement" do not mean that the consideration payable by P & M to Mrs. Tibbets is negotiable annually. The trial court was correct in denying her motion for a new trial.

Affirmed.