**MOUNTAIN CEMENT COMPANY, a Wyoming Joint Venture or Partnership, Appellant (Defendant),**

v.

**Millard C. JOHNSON and Deanna J. Johnson, Appellees (Plaintiffs).**

No. 93–227.

Supreme Court of Wyoming.

Oct. 28, 1994.

Rehearing Denied Nov. 22, 1994.

Philip A. Nicholas and Stephen N. Goodrich, Nicholas Law Offices, Laramie, for appellant.

Cary R. Alburn, III, Laramie, for appellees.

Before GOLDEN, C.J., and THOMAS, CARDINE,* MACY,** and TAYLOR, JJ.

GOLDEN, Chief Justice.

Appellant Mountain Cement Company appeals from a partial summary judgment which terminated an easement across land belonging to Appellees Millard C. Johnson and Deanna J. Johnson.

We reverse the partial summary judgment to appellees and remand for further proceedings consistent with this opinion.

Mountain Cement presents this issue:

Partial Summary Judgment for appellees was improper because:

(1) if the December 31, 1981 Agreement and Easement is ambiguous then genuine issues of material fact exist and neither party is entitled to summary judgment; or

(2) if the Agreement and Easement is unambiguous the trial court has rewritten the agreement under the guise of interpretation and appellant rather than appellees is entitled to judgment as a matter of law.

Johnson restates the issue as:

Whether the District Judge correctly interpreted, that the December 31, 1981, Agreement and Easement was terminated by its own terms, because of the actions or inactions of Appellant or Appellant's predecessors in interest?

## FACTS

Before 1981, Mountain Cement's predecessor, Monolith Portland Cement Company, owned the west half of Section 25, a parcel of land located south of Laramie, Wyoming, in Albany County. The east half of Section 25 was owned by Mrs. Johnson and her ex-husband, William Despain. Monolith had operated a quarry on the land it owned for a long period and later began operating a quarry east of the Section 25 land owned by the Despains. In 1981, Monolith took steps to secure access to the latter quarry. By limited warranty deed, Monolith conveyed the west half of Section 25 to the Despains reserving two roads to Monolith, a north-south road and an east-west road. At the same time, the Despains, by Agreement and Easement, granted Monolith an easement across the east half of Section 25. Monolith built a road across both sections of the land that connected the quarry east of Section 25 to its plant west of the land. The easement agreement set out royalty payments for material transported over the east-west road. The parties also signed a royalty sales agreement setting out royalty payments for the materials hauled in or out along the north-south road in the west one-half of the section.

In 1986, Mountain Cement acquired Monolith's interest and because of contested mining permits suspended most hauling on the easement road. Mountain Cement continued to pay the semi-annual minimum royalties, as provided for in the Agreement and Easement and contends it continued to use and maintain the road.

In 1992, the Despains divorced, and Mrs. Despain received Section 25. When she married Millard Johnson, both became own-

* Retired July 6, 1994.

** Chief Justice at time of consideration.

ers of Section 25 and began plans to subdivide the land. Mrs. Johnson notified Mountain Cement that she was terminating the easement across the east half of Section 25 for nonuse. She sought, and the district court granted in the form of a partial summary judgment, a declaratory judgment that the easement was terminated. The district court also granted a partial summary judgment in favor of Mountain Cement and ruled that its two rights of way located on the west half of Section 25 were not terminated. That ruling was not appealed.

## DISCUSSION

### Standard of Review

■ Summary judgment is proper only when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. Wyo.R.Civ.P. 56(c). We review a summary judgment in the same light as the district court, using the same materials and following the same standards. "We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record." *Four Nines Gold, Inc. v. 71 Constr., Inc.*, 809 P.2d 236, 238 (Wyo.1991).

At issue in this case is the language of paragraphs two and four of the Agreement and Easement (document):

2. The said easement shall continue for so long a period as Grantee shall, in Grantee's sole discretion, require the road to enable Grantee to transport material to Grantee's aforementioned plant, and the said easement shall run with the land, and any subsequent conveyances of any interest in the land over and across which the said easement runs shall be subject to the said easement.

4. Grantee shall file for the record in the office of the County Clerk and ex-officio registrar of Deeds of the County of Albany, State of Wyoming, a release of the easement herein granted within thirty (30) days following the date on which Grantee has not used the road for one continuous twelve month period, and the failure of the

Grantee to so file a release shall entitle Grantors, on demand made by them on Grantee, to be paid as liquidated damages for any and all loss occasioned Grantors by such failure the sum of Two Thousand and No/100 ($2,000.00) Dollars.

Grantee shall within a reasonable time following Grantee's non-use of the road for such continuous twelve month period re-seed the road and fill in and re-seed the borrow pits created in the construction and maintenance of the road.

Both parties agree the language of the contract is unambiguous. However, both offer completely different explanations of what that clear meaning supposedly is. Mountain Cement (grantee) contends the language of paragraph two clearly creates an easement terminable only at its sole discretion and claims paragraph four merely provides for damages if certain procedures do not occur following that termination. The Johnsons (grantor), however, contend that the paragraphs represent two methods of termination—one at Mountain Cement's discretion and one at the Johnsons' discretion if there is nonuse for a continuous twelve month period.

■ Our basic purpose in construing or interpreting a contract is to determine the intention and understanding of the parties. *Rouse v. Munroe*, 658 P.2d 74, 77 (Wyo. 1983). In construing a written agreement, we must derive the meaning of the instrument from its language if the terms are clear and unambiguous. *Tibbets v. P & M Petroleum Co.*, 744 P.2d 651, 652 (Wyo.1987). When the language is clear, we look no further than the four corners of a contract to determine the intent of the parties. *Id.* at 652. "The contract as a whole should be considered, with each part being read in light of all other parts." *Rouse*, at 77. If the terms are clear, then it falls within the province of the court to construe the instrument as a matter of law. *Tibbets*, at 653.

■ Mindful that the document should be considered as a whole with the parts fitted harmoniously, it appears that each of these paragraphs has a different principal object. The principal object of paragraph two is to describe the nature and term of the ease-

ment, i.e., "The said easement shall continue for so long a period as Grantee shall, in Grantee's sole discretion, require the road to enable Grantee to transport material * * * and the said easement shall run with the land * * *." In other words, this language describes the easement as one of indefinite duration solely within the grantee's power to determine.

Paragraph four, on the other hand, has as its principal object simply the method by which the grantee will effect the release of the easement and the consequences flowing from the grantee's failure to use that method. Also, under this provision, the easement-releasing grantee is obligated to re-seed the easement area. In this context, the parties have identified a point in time to be used as a reference point for the effectuation of the objects, *viz.*, the grantee shall file the easement release "within thirty days following the date on which grantee has not used the road for one continuous twelve month period"; and the grantee shall re-seed "within a reasonable time following grantee's non-use of the road for such continuous twelve month period."

Seeing the easement document in light of the objects of the two paragraphs in question, we find the document is unambiguous and the indefinite term of grantee's use is within the grantee's power of determination, that is, as long as grantee requires the road to enable it to transport material to its plant. Consequently, it cannot be found that the parties intended to use paragraph four's language as a qualifier to the term clearly set forth in paragraph two.

We reverse the district court's grant of partial summary judgment to the Johnsons and remand for further proceedings consistent with this opinion.

THOMAS, J., files an opinion concurring specially.

CARDINE, J., files a dissenting opinion.

MACY, J., files a dissenting opinion in which CARDINE, J., joined.

THOMAS, Justice, concurring specially.

I find additional insight into the proper construction of the Agreement and Easement by looking to the language of paragraph eight of that document and the manner in which it was followed by the parties. That paragraph of the Agreement and Easement reads:

8. Grantee shall as part of the consideration for the easement herein granted pay Grantors the sum of one and one-half cents ($.015) per ton of material hauled by Grantee (or by a contractor or contractors employed by Grantee) over the road. Payment of the royalties herein provided shall be made by Grantee to Grantors monthly, the first such payment to be made one month and ten days following the hauling of the first load of material over the road, and subsequent payments to be made to Grantors by Grantee at monthly intervals thereafter. It is specifically provided, however, that in the event that the royalties so paid Grantors by Grantee for any six month period as herein defined, to-wit: the first six month period to end six months after the date of the first such monthly payment, and each subsequent six month period to end at six month intervals thereafter; prior to Grantee's cessation of use of the road for a period of twelve consecutive months total less than One Thousand and No/100 ($1,000.00) Dollars, Grantee shall pay Grantors the difference between the total monthly royalties so paid by Grantee to Grantors during such six month period and One Thousand and No/ 100 ($1,000.00) Dollars.

There appears to be no question that these payments were made in the amount of $1,000.00 each six months since 1986. Under the clear language of paragraph eight those payments were only to be made "prior to Grantee's cessation of use of the road for a period of twelve consecutive months * * *." During those years, Mountain Cement was not hauling materials to its plant over the easement, but it was using the road for other purposes and maintaining it. Consequently, there was not a total cessation of use such as paragraph four of the Agreement and Easement seems to contemplate, and the parties

manifested their accord in that regard by the payment and receipt of the minimum royalties.

It is clear to me that up until the commencement of this action the parties understood their agreement to permit Mountain Cement to not use the road to haul materials to its plant so long as the minimum royalty was paid. Since there was some use of the road and those payments were made, the Agreement and Easement did not terminate under paragraph four. The only other possibility is termination under paragraph two, and it is clear that Mountain Cement did not determine, **in its sole discretion,** that the road was no longer useful to transport material to its plant.

The result of the majority opinion is entirely consistent with such a resolution, and I am in full accord with that disposition.

CARDINE, Justice, Retired, dissenting.

I also believe the agreement is unambiguous. It provides that the grantee will retain the easement as long as "Grantee shall * * * require the road * * * to transport material." That is a fair reading of the parties' agreement. It is the only one that is grounded in common sense. When material is no longer being transported, the road is not required "to transport material"; and if that situation continues for twelve months, the easement terminates.

Both the majority of this court and this dissenting justice, however, find the agreement unambiguous. Each concludes its meaning to be totally contrary to the other's position. Perhaps, then, this is a classic case of an **ambiguous** agreement. If so, then the court must ascertain the intent of the parties to arrive at a correct disposition of the case. The easement will never terminate under the opinion as now written by the court, for appellant only need claim that it needs the easement to transport material and never thereafter transport material. It boggles the mind that the court can conclude that this is what the parties intended when they made their agreement. At a minimum, the summary judgment should be reversed and evidence taken to ascertain the parties' intent.

MACY, Justice, dissenting, with whom CARDINE, Justice (Retired), joins.

I dissent. Although the majority concedes that the Agreement and Easement should be considered as a whole, it has failed to consider paragraph 1:

1. Grantors do hereby for themselves, their heirs, executors, administrators, successors and assigns grant, assign and set over to the Grantee[,] its successors and assigns an easement for a right of way for a road for the purpose of hauling material to Grantee's plant in Albany County, Wyoming. . . .

As stated in paragraph 1, the purpose of the easement was to permit Mountain Cement to haul material to its plant. According to paragraph 2, the easement continued for as long as Mountain Cement required the easement to enable Mountain Cement to transport material to its plant. Paragraph 4 required Mountain Cement to record a release of the easement within thirty days after it failed to use the easement for twelve continuous months. Mountain Cement was also required to reclaim the easement area within a reasonable period of time. The express purpose of the damages provision of paragraph 4 was to compensate the Johnsons in the event that Mountain Cement failed to record the release of the easement and to reclaim the surface of the land. The terms of the damages provision did not permit Mountain Cement to revive the easement by paying the stipulated sum after the easement had been terminated.

Mountain Cement admitted that, for at least twelve continuous months, it had not used the easement to haul material to the plant. The easement automatically terminated after twelve continuous months of nonuse.

I would affirm the partial summary judgment in favor of the Johnsons.