# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 42

### APRIL TERM, A.D. 2013

### April 11, 2013

JASON THORNOCK and TRACY
THORNOCK,

Appellants
(Plaintiffs),

v.

ERICK W. ESTERHOLDT, as Trustee of
the Erick W. Esterholdt Revocable Trust
dated August 6, 2009, and JEANNE M.
ESTERHOLDT, as Trustee of the Jeanne
M. Esterholdt Revocable Trust dated
August 6, 2009,

Appellees
(Defendants).

S-12-0138

*Appeal from the District Court of Lincoln County*
*The Honorable Dennis L. Sanderson, Judge*

*Representing Appellants:*
David M. Clark of Worrall & Greear, P.C., Worland, Wyoming.

*Representing Appellees:*
Sharon M. Rose, The Rose Law Firm, P.C., Evanston, Wyoming.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**VOIGT, Justice.**

[¶1]    The Thornocks filed an action against the Esterholdts and others, seeking to quiet title to certain lands in Lincoln County, Wyoming.  The district court eventually granted summary judgment to the Thornocks as to some of the land, but denied summary judgment as to a certain strip of property.  After a bench trial, the district court quieted title in the disputed strip of land in the Esterholdts.  The Thornocks appealed.  The district court's findings of fact are not clearly erroneous in any material way, and they support the court's conclusions of law, so we affirm.

**ISSUES**

[¶2]    1.    Whether an appurtenant easement was created by a deed that granted,  in addition to tracts of fee title land, "[a]lso that right of way to be used in connection with said land and described as follows:  . . ."

2.    Whether, if the answer to the first question is in the negative, an appurtenant easement was created by a deed that granted "[a] right-of-way, described as follows, to wit:  . . ."

**FACTS**

[¶3]    While somewhat oversimplified, it is helpful to visualize the lands involved in this case as being in the form of a capital letter "H."   The right upright of the H is a public highway.  The left upright of the H is a railroad right-of-way.  The crossbar of the H is the parcel of land in dispute--the parcel in which the district court quieted title in the Esterholdts.  This parcel is 80 feet wide and 617 feet long, and it lies in the midst of the Esterholdts' property.

[¶4]    It is uncontested that the Esterholdts own land between the railroad right-of-way and the public highway.  It is also uncontested that the Thornocks own land west of and adjacent to the railroad right-of-way.  A dam and ponds were constructed on the disputed parcel by the Esterholdts' predecessor in title during the 1950s and the parcel has not been used historically to access the Thornocks' land.

[¶5]    For some time, the Thornocks accessed their property from the public highway via a road across the Esterholdts' neighbor to the north.  When the neighbor began to deny use of the road to the Thornocks, they began to look for alternatives.  That search led them to the strip of land now in dispute.  Resolution of the quiet title dispute requires the interpretation of numerous deeds relating to the strip of land, itself, and to the surrounding lands.  Those deeds will be identified and discussed in  further sections of this opinion.

1

## STANDARD OF REVIEW

[¶6]     "The applicable standard of review is that we derive the meaning of an easement from its language, much as we would in the case of a deed or other written agreement." *Edgcomb v. Lower Valley Power & Light, Inc.*, 922 P.2d 850, 854 (Wyo. 1996) (quoting *Steil v. Smith*, 901 P.2d 395, 396 (Wyo. 1995) (citing *Tibbets v. P & M Petroleum Co.*, 744 P.2d 651, 652-53 (Wyo. 1987); 25 Am. Jur. 2d *Easements and Licenses* § 75 (1966))).  "If the language of the easement is not ambiguous and if the intent of the parties can be gathered from its language, that should be done as a matter of law." *Edgcomb*, 922 P.2d at 854 (quoting *Steil*, 901 P.2d at 396 (citing *Glover v. Giraldo*, 824 P.2d 552, 554 (Wyo. 1992); *Smith v. Nugget Exploration, Inc.*, 857 P.2d 320, 323 (Wyo. 1993); *Tibbets*, 744 P.2d at 653)).

[¶7]     In *Mueller v. Hoblyn*, 887 P.2d 500, 504 (Wyo. 1994), we explained the review process as follows:

> The findings of fact made by the district court will not be set aside unless clearly erroneous.  *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 538 (Wyo. 1993).  "'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"  *Id*. (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).  The district court's conclusions of law are not binding upon this court and are reviewed *de novo*.  *Hopper*, 861 P.2d at 538; *Powder River Oil Co. v. Powder River Petroleum Corp.*, 830 P.2d 403, 407 (Wyo. 1992).

## DISCUSSION

[¶8]     Hopefully, it will be more helpful than confusing to begin this discussion with a brief history of the ownership of the lands that became the Thornocks' and Esterholdts' properties.  In 1893, William Garratt "proved up" his homestead claim and received a patent from the United States government covering the lands in question.  In 1905, Richard Roberts obtained from Garratt title to the property lying east of the railroad right-of-way.  That same year, Garratt sold the land lying west of the railroad right-of-way to Caloway H. Hamilton.  In 1907, Hamilton transferred the land lying west of the railroad to John H. Stoner and C.F. Stoner (the Stoner Brothers).  Richard Roberts transferred to the Stoner Brothers the small parcel of land lying east of the railroad right-of-way, the ownership of which is now in contention.  The language of that transfer is as follows:

2

[Roberts has] granted, bargained, sold and conveyed, and by these presents doeth grant, bargain, sell and convey, unto said [Stoner Brothers], and unto his [sic] heirs and assigns, forever, all that piece or parcel of land, situate, lying and being in the County of Lincoln and State of Wyoming, and more particularly known and described as follows, to-wit: Commencing at the Southwest corner of the Southeast quarter of the Northwest quarter of Section Twenty eight, Township Twenty five, North Range 119 west of 6th P.M., thence running west Five Hundred and eight feet (508) to the right of way of Oregon Short Line Railroad, thence south along said Right of way Eighty feet (80), thence East to Center of County Road, Six Hundred and Seventeen (617) feet, thence North Eighty (80) feet along center of said County Road, thence West One Hundred and Three (103) feet, to Corner Stake, or stone and place of beginning, the same all being, lying, and situated in Section 28, Township 25, N.R. 119 West of the 6th Principal Meridian, in Uinta County, Wyoming.

[¶9]   Notably, this parcel of land is not described as an easement or right-of-way, there is no  land described as a dominant estate for any easement, and Roberts retained no right or title to the property.  In summary, the Stoner Brothers obtained title to the lands west of the railroad right-of-way and the lands in dispute which lie east of the railroad right-of-way from different grantors and with no connection between the two parcels noted in either deed.  The two parcels are not contiguous, being separated as they are by the railroad right-of-way, over which there is no evidence of the Thornocks or any of their predecessors in title having a right-of-way or other access that would join the two parcels.

[¶10]  In 1917, Roberts conveyed his property lying east of the railroad right-of-way to Quealy Sheep and Livestock Company.  Specifically excepted from the transfer was the strip of land just described above that Roberts had sold to the Stoner Brothers.  The appearance of the exception in this deed is evidence that Roberts did not believe he retained any title to the parcel that he could convey.  Nineteen years later, when Quealy Sheep and Livestock Company conveyed the property east of the railroad right-of-way to Lincoln Feeders Corporation, the same exception was contained in the deed.  In 1943, Lincoln Feeders Corporation executed a warranty deed in favor of Continental Live Stock Loan Company, covering the same lands east of the railroad right-of-way and again excepting from the conveyed lands the above-described strip of land.  In none of these transactions is the strip of land described as an easement or a right-of-way, and in none of these transactions is a connection made between the strip of land, which is east of the railroad right-of-way, and the lands lying west of the railroad right-of-way.  Nor is there

3

anything in the record showing any attempt by any of the serial owners of the lands lying west of the railroad right-of-way to obtain from the railroad access from the western properties to the strip of land lying to the east. In other words, there is no record evidence of any owner of the lands to the west of the railroad right-of-way claiming that the purpose of Roberts' transfer of the strip of land to the Stoner Brothers was for the purpose of access from the public highway to the lands lying west of the railroad right-of-way.

[¶11] The next deed of significance in this history, and one of the deeds with which we will be most concerned, is a warranty deed in 1946 from the widows of the Stoner Brothers to J.D. Noblitt. In addition to transferring three parcels of land lying west of the railroad right-of-way, the Stoner Brothers' widows transferred the strip of land at issue here, using the following language:

> Also that right of way to be used in connection with said land and described as follows: [legal description of the strip of land in question]

This reference to "that right of way to be used in connection with said land" is the first record reference of some connection between the western lands and the disputed parcel. These words are the focus of the Thornocks' first issue.

[¶12] In 1957, Noblitt executed a deed conveying land acquired from the Stoner Brothers' widows to J.N. Igo. This land is primarily the present-day Thornock land west of the railroad right-of-way, but the deed also included a conveyance of "[a] right-of-way, described as follows, to-wit: [the contested strip of land on the east side of the railroad right-of-way]." This language is the focus of the Thornocks' second issue in this appeal. In 1972, Cokeville Land and Livestock Company conveyed land described in the Noblitt/Igo deed to Thomas S. Harrower, which deed included the language "[t]ogether with all right, title and interest in that right-of-way described as follows: [the contested strip of land on the east side of the railroad right-of-way]."[1] After he died, Harrower's heirs quitclaimed his properties to Norman M. Harrower. That quitclaim deed included the strip of land at issue here, describing it as a "right of way."

[¶13] At about the same time that the Stoner Brothers' widows made the above-described conveyance to Noblitt, Continental Live Stock Company transferred the lands lying east of the railroad right-of-way to J.A. Reed. The warranty deed excepted from the sale the parcel with which we are now concerned--the crossbar of the H. Thereafter, Reed quitclaimed lands east of the railroad right-of-way to Julianne Reed Biggane. That deed does not mention the contested strip of land. In 2006, Jeanne Reed Esterholdt and

---

[1] The parties agree that the gap in title between Igo and Cokeville Land and Livestock Company was cured by the Act and partial judgment entered in this matter.

4

Frederic Clark Reed, successor co-trustees of the John D. Biggane Trust, quitclaimed the same lands to Jeanne Reed Esterholdt. There is nothing in the record before us that explains these breaks in the chain of title, but they are not at issue herein and do not affect the present issues. The Esterholdts' chain of title to most of the lands east of the railroad right-of-way was completed by a warranty deed from Jeanne Esterholdt and her husband to their revocable trusts. That deed makes no specific reference to the contested parcel. After this controversy began, Norman Harrower quitclaimed the contested strip to Jeanne Reed Esterholdt.

[¶14] Finally, the record reflects that the present-day Thornocks obtained title to the property west of the railroad right-of-way through Jason Thornock's grandfather. Jason Thornock testified at the hearing that, to his knowledge, neither the deed to his grandfather nor his deed mentioned the parcel of land now in dispute.

[¶15] Thornocks' position in this appeal is that, in the deed of the Stoner Brothers' widows to Noblitt, the words "that right of way to be used in connection with said land" intended to convey an easement for a right-of-way from the state highway to the lands west of the railroad right-of-way, which easement was appurtenant to those lands. The Esterholdts, to the contrary, argue that the deed of the Stoner Brothers' widows was clearly a fee simple transfer, rather than an easement, because the widows clearly retained no lands which can be seen as a servient estate, and also because the term "right-of-way" is not sufficiently described so as to support the Thornocks' contentions. In their second issue, the Thornocks basically make the same argument in respect to the language in the deed from Noblitt to Igo, that also transferred a "right-of-way" described as the land now in question. The Esterholdts respond that, with no record of an appurtenant easement, they obtained title to the disputed property via the mesne conveyances from Cokeville Land and Livestock to Harrower, and subsequently from Harrower to them. The underlying legal question is whether an appurtenant easement was created that passed with any subsequent transfer of the lands west of the railroad right-of-way, whether specifically mentioned or not.

[¶16] The district court issued an order containing detailed findings of fact and conclusions of law. Before reciting those finding and conclusions, the district court described the issue of the case as follows:

> The central question in this case is whether the Grantors (the Stoner Widows) intended to convey an easement or a fee simple interest in an 80 x 617 foot strip of land in a warranty deed they executed in 1946 to J.D. Noblitt. If the interest conveyed was intended to be an appurtenant easement, then the [Thornocks] prevail unless the [Esterholdts] have proven it was extinguished by adverse possession or unless it was abandoned. If the intent was to

5

convey fee ownership of the strip, then the [Esterholdts] prevail.[2]

[¶17] The most pertinent findings of fact made by the district court are as follows:

A.1. . . . The parties stipulated at trial that the Esterholdts own the 80-foot strip; the difference of opinion being that the Thornocks contend they own an easement that is appurtenant to their land west of the railroad. The Esterholdts claim the Thornocks own nothing in the 80-foot strip.

. . . .

B.2. The deeds admitted as exhibits show that the disputed 80 x 617 foot tract was carved out of a larger tract of land in a warranty deed dated December 11, 1911 owned by Richard and Retta Roberts who were owners of the land east of the railroad. They conveyed an 80 x 617 foot strip of land to the Stoner Brothers who owned land west of the railroad. It appears to be a conveyance in fee simple. No other property was conveyed in this deed and the deed did not refer to the strip of land as an easement or right-of-way.

. . . .

B.4. The next deed involving the disputed tract is recorded in September 1946 wherein Ethel Stoner and Julia Stoner, apparent surviving spouses and heirs of the Stoner Brothers (the Stoner Widows) conveyed the Stoner property lying west of the railroad to J.D. Noblitt. [] After describing the land conveyed (the deed) in a separate subsequent paragraph it states:

Also that right-of-way to be used in connection with said land and described as follows: (The 80 x 617 foot disputed tract is then described) [emphasis added].

The right-of-way description is the same metes and bounds description that was in the earlier Roberts to Stoner deed.

---

[2] Because the district court found that no easement had been created, and that the Esterholdts owned the disputed strip of land, the Esterholdts' adverse possession and abandonment claims were not considered.

6

B.5. In 1957 J.D. Noblitt conveyed this property to J.N. Igo. The description of the property being transferred differs from the Stoner Widows deed in the introductory language to the disputed strip as "a right-of-way". It doesn't use the terms "that right-of-way" or "easement" and is does not state that it was for "use in connection with" any property. []

. . . .

B.7. Cokeville Land and Livestock Company conveyed this property to Thomas Harrower in July of 1972. [] As to the disputed property, it contains the following language:

> Together with <u>all right, title and interest in that right-of-way</u> described as follows: [emphasis added.]

B.8. Norman Harrower, Thomas Harower's son, inherited his father's property by virtue of a Decree of Distribution in 1979. [] These are the last documents introduced into evidence. Shortly before this litigation began, the Harrowers quitclaimed the 80-foot strip to the Esterholdts.

B.9. Jason Thornock, the plaintiff, testified that "to his knowledge" the deed to his grandfather, John Thornock, and his deed did not mention the 80-foot strip or a right-of-way or easement. These deeds were not introduced into evidence. Thornock argues that it was not necessary to include it because the easement was appurtenant to his land when conveyed by the Stoner Widows to J.D. Noblitt.

B.10. The conveyances of land in the chain of title encompassing the Esterholdt land all except from the conveyance the disputed tract. The exception does not describe the property as an easement or right-of-way. Rather it is described as a parcel of land that is excepted from the conveyance. []

B.11. As previously discussed, the language in the Roberts to Stoner Brothers deed indicates that the Stoner Brothers bought a strip of land to provide a way, a route, or means of access from the road to their lands through the Roberts' land. The language in the deeds of conveyance of the land now

7

owned by the Esterholdts indicates that the parcel of land had been sold in fee and was excepted from those conveyances. However, it is not clear from the deed from the Stoner Widows to J.D. Noblitt that they intended to sell the 80-foot strip of land outright in fee simple or simply convey an appurtenant easement and reserve the ownership of the land. The term "that right-of-way" in the Stoner Widows deed can be interpreted to mean an easement to be used as a right-of-way. However, the parties did not produce any deed or decree of distribution of the Stoner Widows' estate(s) or property tax records that would indicate an intention or belief on the Stoner Widows' part that they still owned the land subject to an easement after they conveyed to J.D. Noblitt. It is thus not clear that the term "right-of-way" in the Stoner Widows deed meant that it was describing its intended use under fee simple ownership or to an easement.[3]

C.1.    In the 1940s John Reed built a cabin just outside of the disputed property. He dammed the old Bear River Channel at a point within the disputed property and created a pond for fish and wildlife. During the summers of the following years, his wife grazed sheep on the disputed tract.

C.2.    The Esterholdts (Reed's successors in title) posted the gates entering the tract with "no trespassing" signs.

C.3.    Mr. Russell Dayton, a former employee of J.D. Noblitt and J.N. (Jack) Igo, testified that the 80-foot strip was occasionally used in the late 1940's by Noblitt or Igo as a route to drive his livestock but it stopped after John Reed complained about the dust being stirred up. After that, Noblitt and Igo used an "old established right-of-way" lying to the north (Stan Larsen referred to it as the Pete Nelson Crossing) because it would be a simpler and better route. Stan Larsen testified that his father and he used to work for Jack Igo in the summer and in the 1950's and that they used the Pete Nelson Crossing to the north of the disputed property because it was more convenient.

---

[3] The first sentence of this finding could be considered to be clearly erroneous. There is no language whatsoever in the Roberts to Stoner Brothers deed indicating that the parties intended the strip of land "to provide a way, a route, or means of access from the road to" the Stoner Brothers' land. On its face, the deed is nothing more than a fee simple conveyance of property.

8

C.4.  The Thornocks did not use the disputed strip of land to get to their property across the railroad.  They either used the "Nelson Crossing" or got to their property from the south.

[¶18]  Focusing on the specific question that is the first issue in this appeal, the district court concluded that, as a matter of law, the words "that right-of-way to be used in connection with said land" as found in the deed from the Stoner Brothers' widows to Noblitt are ambiguous.  We agree, and would go so far as to say that, not only is the phrase ambiguous, it is so vague as to be unenforceable by the district court.  *See e.g.*, *Action Ads, Inc. v. Judes*, 671 P.2d 309, 312 (Wyo. 1983) (vague contract may not be enforced by court); and *Madrid v. Norton*, 596 P.2d 1108, 1116 (Wyo. 1979) (alleged agreement so vague as to be unenforceable).  The Thornocks, not this Court, have the duty to establish the existence and terms of any easement.  *See e.g.*, *Collins v. Finnell,* 2001 WY 74, ¶ 21, 29 P.3d 93, 101 (Wyo. 2001); and *Black & Yates v. Negros-Philippine Lumber Co.*, 32 Wyo. 248, 231 P. 398, 401 (1924).

[¶19]  We agree with the district court that both "that right-of-way" and "to be used in connection with said land" are ambiguous.  We begin by noting that in both *Merriam-Webster's Collegiate Dictionary* 1220-21 (10th ed. 1999), and *Webster's Third New International Dictionary* 2367-68 (2002), the definitions and usages of the word "that" take up nearly an entire page.  We cannot argue with the district court's determination that, in the present context, the definition or usage best fitting may be  "a particular or specific  right-of-way  that is  'in existence or understood.'   *See* 'that', *Webster's Dictionary* at 1294."  The district court concluded that, "[t]hus, the word 'that' indicates there was an existing right-of-way that the parties understood to be in existence."  The district court then took the next logical step and concluded that, even if by "that right-of-way" the parties meant to identify the disputed parcel, such identification does nothing to identify the right-of-way as being an easement, rather than a fee simple conveyance.  Beyond that, we would note that the phrase "right-of-way" is not limited in its meaning to "a way of passage or access to another parcel."  A right-of-way may be created for a way of passage for people, vehicles, and animals;  it may be created for the erection and maintenance of utility lines or pipes, or for other uses.  For present purposes, however, the real problem is that a "right-of-way" may be held in any of various estates; it may be a servitude or easement, or it may be a fee interest.  *Davidson Land Co., LLC v. Davidson*, 2011 WY 29, ¶ 19 n.4, 247 P.3d 67, 73 n.4 (Wyo. 2011).

[¶20]  The district court further concluded that use of the word "easement" by the parties would have been more precise if that is what they intended.  An easement is "[a]n interest in land which entitles the easement holder to a limited use or enjoyment over another person's property."  *Hasvold v. Park Cnty. Sch. Dist. No. 6*, 2002 WY 65, ¶ 13, 45 P.3d 635, 638 (Wyo. 2002) (quoting *Mueller v. Hoblyn*, 887 P.2d 500, 504 (Wyo. 1994)).  As succinctly put by the district court, "[a]n easement authorizing a right of passage is a

9

right-of-way; but a right-of-way is not necessarily an easement." In that regard, it must be noted again that the deed of the Stoner Brothers' widows made no mention of an easement, reserved no rights or ownership to the widows, and was in the nature of a fee simple conveyance. In addition, no evidence was presented to the district court that the Stoner Brothers' widows ever again had any use of or connection with the described parcel; no owner of the lands west of the railroad right-of-way was shown to have attempted to obtain passage across the railroad right-of-way to connect the disputed parcels to those western lands; and all future owners of the lands east of the railroad right-of-way specifically excepted the parcel from any transfers of those lands. We have noted more than once that the parties' own conduct is evidence of intent. *See e.g.*, *Linton v. E.C. Cates Agency, Inc.*, 2005 WY 63, ¶ 16, 113 P.3d 26, 30 (Wyo. 2005); and *Ashland Oil Co. v. Jaeger*, 650 P.2d 265, 269 (Wyo. 1982).

[¶21] The district court did reach a conclusion of law with which we do not agree:

> A.12. The sentence in the deed from the Stoner Widows to J.D. Noblitt introducing the description of the strip of land also uses the term, "to be used in connection with said land" referring to the other land being sold. The term, "to be used in connection with," when used in connection with the term "right-of-way," it is saying in effect, "that the strip of land is to be used for the purpose of getting passage to the other parcel of land conveyed." It appears to be an indication of the use to be made of the strip of land that could be owned in fee or as an easement.

[¶22] Our disagreement with the district court is not that its conclusion is not a reasonable conclusion that might be reached from an interpretation of the words "to be used in connection with." Our disagreement with the district court is founded upon our conclusion that these words do not necessarily, as a matter of law, mean what the district court concludes. It must be remembered that, at the time of the conveyance of the deed of the Stoner Brothers' widows, the western lands had two other accesses to the public highway, and it should be noted that the disputed parcel, itself, had access to the public highway. For all anyone can tell from the words "to be used in connection with" is that Noblitt apparently intended to use both parcels for some activity.

[¶23] In short, there is nothing within the deed of the Stoner Brothers' widows that indicates it was meant to be an easement. On its face, it is a fee simple conveyance, and that is what we conclude it was. That determination is consistent with Wyo. Stat. Ann. § 34-2-101 (LexisNexis 2011), which declares that "every conveyance of real estate shall pass all the estate of the grantor therein, ***unless the intent to pass a less estate shall expressly appear or be necessarily implied in the terms of the grant.*** (Emphasis added.) This statute adds to the conclusion that the deed of the Stoner Brothers' widows passed

10

their entire estate in fee simple because the intent to pass a lesser intent does not expressly appear in the deed, nor must such necessarily be implied by the terms of the deed.

[¶24]  We affirm the district court's conclusion that the deed from the Stoner Brothers' widows did not create an easement appurtenant to the lands west of the railroad right-of-way.  We need not repeat the analysis in responding to the second issue because the language contained in the Noblitt to Igo deed is even weaker in attempting to prove an appurtenant easement.  Rather, it simply refers to the disputed strip of land as "a right-of-way."   That language is even more ambiguous, vague, and unenforceable than the language of the deed of the Stoner Brothers' widows.

## CONCLUSION

[¶25]  The Thornocks do not have an appurtenant easement in the disputed land, which is owned by the Esterholdts.  The district court is affirmed.