DAVIS, Chief Justice.
[¶1] Forest and Jennifer Reichert own Lot 8 in the Western Tanager Subdivision in Jackson, Wyoming, and Jeff and Debra Daugherty own Lot 7. The Reicherts filed a quiet title action against the Daughertys challenging the enforceability of a plat restriction that bars Reicherts' use of a portion of Lot 8 and gives exclusive use of and responsibility for that property to the Daughertys. The district court granted summary judgment to the Daughertys, and we affirm.
ISSUES
[¶2] The Reicherts present two issues on appeal, which we summarize and restate as a single issue:
Does the restriction contained in the subdivision's recorded plat create an enforceable covenant appurtenant to Lot 8?
FACTS
[¶3] The Reicherts and Daughertys own adjacent properties in the Western Tanager Subdivision in Jackson, Wyoming. The Reicherts obtained their property by a warranty deed dated September 24, 1996, which described the property as: "Lot 8 Western Tanager Subdivision Second Amendment, Teton County, Wyoming, according to that plat recorded in the Office of the Teton County Clerk on September 12, 1990 as Plat No. 701." The warranty deed conveyed the property "subject to taxes, reservations, covenants, encroachments, conditions, restrictions, rights-of-way and easements of sight and/or record."
[¶4] The Daughertys obtained their property by a warranty deed dated February 21, 2014, which described the property as: "Lot 7 Western Tanager Subdivision, Second Amendment, Teton County, Wyoming, according to that plat recorded September 12, 1990 as Plat No. 701." The warranty deed also conveyed the property "subject to taxes, reservations, covenants, encroachments, conditions, restrictions, rights-of-way and easements of sight and/or record."
[¶5] Both Lots 7 and 8 are located on and accessed via Juniper Lane, with the entirety of Lot 7 located to the west of Juniper Lane. Most of Lot 8 is located to the east of Juniper Lane, but the westernmost portion of Lot 8 is transected by Juniper Lane, leaving a strip of Lot 8 to the west of the road. Lot 6 is configured in a similar manner, with most of it situated to the east of Juniper Lane and a small strip to the west of the road.[1]
*993 [¶6] The smaller strips of Lots 6 and 8 located to the west of Juniper Lane are each marked on the subdivision's recorded plat (Plat 701) as a "restricted use area," with a reference to the Certificate of Owners located on sheet one of the plat. The Certificate of Owners specifies:
Lot 6 and 8 of the foregoing subdivision shall have no private use or maintenance responsibility within that area of the Juniper Lane right-of-way which is located on the northwesterly side of the actual Juniper Lane road; said private use and maintenance responsibility shall be assigned instead to Lots 4, 5, and 7 of the foregoing subdivision; each of said Lots being assigned the private use of, and maintenance responsibility for the portion of said area which adjoins that Lot, and lies between the easterly extensions of the side boundaries of that Lot.
[¶7] In 2015, the Reicherts and Daughertys began having issues concerning a fence located on Lot 8's restricted use area west of Juniper Lane. The fence existed when the Reicherts purchased Lot 8 in 1996, and both parties claim they have done work to maintain it. The parties disagreed on which of them controlled the fence and what should be done with it. The Reicherts contend the fence should be removed from the Lot 8 restricted use area and relocated to the Lot 7 property line to protect Lot 8 from the Daughertys' livestock and to make room for the Reicherts to store plowed snow. The Daughertys contend that they have the exclusive right to use and maintain the restricted use area, including the fence, and that the Reicherts are improperly plowing their snow onto the property and thereby damaging the fence.
[¶8] The disputed property (restricted use area) and fence are depicted below in relation to the parties' respective properties.
[¶9] The parties were unable to resolve their differences concerning the disputed property, fence, and snow storage, and on March 25, 2016, the Reicherts filed a quiet title action against the Daughertys. The Reicherts sought to quiet title to the restricted use area and requested an order directing the Daughertys to remove the fence from that portion of Lot 8. On cross-motions for summary judgment, the district court ruled in favor of the Daughertys. The court found the terms and provisions of Plat 701 to be clear and unambiguous and concluded:
Under the plain and ordinary meaning of the language imposing the restrictions under Plat 701, [the Reicherts] may not use, and/or they are restricted from using the Disputed Property for their private use, and they have no maintenance responsibility for the Disputed Property. Conversely, [the Daughertys] may use the Disputed Property for their private use and must maintain or provide for the general *994 repair and upkeep [of] the Disputed Property. This restriction included in Plat 701 was a private agreement that restricts the use of the Disputed Property. Further, [the Reicherts] are bound by the restrictions under Plat 701 since they took the property with notice of those reservations and restrictions.
[¶10] The Reicherts timely appealed the district court's summary judgment ruling to this Court.
STANDARD OF REVIEW
[¶11] This Court reviews a district court's grant of summary judgment as follows:
We review a district court's order granting summary judgment de novo and afford no deference to the district court's ruling. Thornock v. PacifiCorp , 2016 WY 93, ¶ 10, 379 P.3d 175, 179 (Wyo. 2016). This Court reviews the same materials and uses the same legal standard as the district court. Id . The record is assessed from the vantage point most favorable to the party opposing the motion ..., and we give a party opposing summary judgment the benefit of all favorable inferences that may fairly be drawn from the record. Id . A material fact is one that would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. Id .
Pioneer Homestead Apartments III v. Sargent Eng'rs, Inc. , 2018 WY 80, ¶ 15, 421 P.3d 1074, 1078-79 (Wyo. 2018) (quoting White v. Wheeler , 2017 WY 146, ¶ 14, 406 P.3d 1241, 1246 (Wyo. 2017) ).
DISCUSSION
[¶12] A restrictive covenant is "a private agreement ... that restricts the use or occupancy of real property, especially by specifying lot sizes, building lines, architectural styles, and the uses to which the property may be put." Sonnett v. First Am. Title Ins. Co. , 2013 WY 106, ¶ 11, 309 P.3d 799, 805 (Wyo. 2013) (quoting Black's Law Dictionary 393 (8th ed. 2004) ). "[I]n general, a developer can create covenants in favor of all landowners by clearly including restrictions in an accurate plat of the development that it properly records." 20 Am.Jur.2d Covenants, Conditions, and Restrictions § 158 (Aug. 2018 update) ; see also Brumbaugh v. Mikelson Land Co. , 2008 WY 66, ¶ 19 n.1, 185 P.3d 695, 702 n.1 (Wyo. 2008) (looking to plat and declaration of covenants to determine property rights and restrictions). The mark of a covenant is its imposition of a burden and grant of a benefit.
Every covenant has a burden to the covenantor and a benefit to the covenantee. The covenantee or grantee's rights under a covenant are called the "benefit" of the covenant, while the covenantor or grantor's duties are called the "burden."
Sonnett , ¶ 11, 309 P.3d at 805 (quoting 20 Am.Jur.2d, supra , § 1, at 557).
[¶13] A restrictive covenant that runs with the land is one that "inures to the benefit of, or must be fulfilled by, whatever party holds the land at the time when fulfillment is due." Jacobs Ranch Coal Co. v. Thunder Basin Coal Co., LLC , 2008 WY 101, ¶ 12 n.4, 191 P.3d 125, 130 n.4 (Wyo. 2008). A covenant runs with the land if:
1) the original covenant is enforceable; 2) the parties to the original covenant intended that the covenant run with the land; 3) the covenant touches and concerns the land; and 4) there is privity of estate between the parties to the dispute.
Id. ¶ 9, 191 P.3d at 129 (quoting Mathisen v. Thunder Basin Coal Co., LLC , 2007 WY 161, ¶ 14, 169 P.3d 61, 65-66 (Wyo. 2007) ).
[¶14] The Reicherts focus their challenge on the first requirement, the enforceability of the Plat 701 restriction, and do not contest the second through fourth requirements for an appurtenant easement. They contend that the restriction is unenforceable because: 1) the terms "private use" and "maintenance" are so vague as to be illusory; 2) the restriction's ambiguity makes it impossible to measure the proportionality of the benefit to Lot 7 and the burden on Lot 8; 3) the restriction is contrary to public policy in that it prevents them from staking and fencing their property to protect its value; and 4) the restriction conflicts with the access easement provided to all subdivision owners. We will address each argument in turn.
*995 1. "Private Use" and "Maintenance" as Illusory Terms
[¶15] "Covenants are contractual in nature and we therefore interpret them as we would a contract." Gumpel v. Copperleaf Homeowners Ass'n, Inc. , 2017 WY 46, ¶ 29, 393 P.3d 1279, 1290 (Wyo. 2017) (citing Wimer v. Cook , 2016 WY 29, ¶ 22, 369 P.3d 210, 218 (Wyo. 2016) ). Our goal is "to determine and effectuate the intention of the parties, especially the grantor or declarant." Wimer , ¶ 22, 369 P.3d at 218 (quoting Omohundro v. Sullivan , 2009 WY 38, ¶ 9, 202 P.3d 1077, 1081 (Wyo. 2009) ). As with any contract interpretation, we begin with a covenant's plain language.
The words used in the contract are afforded the plain meaning that a reasonable person would give to them. Doctors' Co. v. Insurance Corp. of America , 864 P.2d 1018, 1023 (Wyo. 1993). When the provisions in the contract are clear and unambiguous, the court looks only to the "four corners" of the document in arriving at the intent of the parties. Union Pacific Resources Co. v. Texaco , 882 P.2d 212, 220 (Wyo. 1994) ; Prudential Preferred Properties v. J and J Ventures , 859 P.2d 1267, 1271 (Wyo. 1993). In the absence of any ambiguity, the contract will be enforced according to its terms because no construction is appropriate. Sinclair Oil Corp. v. Republic Ins. Co. , 929 P.2d 535, 539 (Wyo. 1996).
Gumpel , ¶ 29, 393 P.3d at 1290 (quoting Thornock v. PacifiCorp , 2016 WY 93, ¶ 13, 379 P.3d 175, 180 (Wyo. 2016) ).
[¶16] We will find an ambiguity in a restrictive covenant only if it "is obscure in its meaning, because of indefiniteness of expression, or because a double meaning is present." Fix v. Forelle , 2014 WY 79, ¶ 16, 327 P.3d 745, 749 (Wyo. 2014) (quoting Fayard v. Design Comm. of Homestead Subdivision , 2010 WY 51, ¶ 12, 230 P.3d 299, 303 (Wyo. 2010) ). In the absence of such an ambiguity, we adhere to the covenant's "plain and ordinary meaning without reference to attendant facts and circumstances or extrinsic evidence, ...." Star Valley Ranch Ass'n v. Daley , 2014 WY 116, ¶ 12, 334 P.3d 1207, 1210 (Wyo. 2014) (quoting Anderson v. Bommer , 926 P.2d 959, 961-62 (Wyo. 1996) ). Additionally, the rule that covenants are to be strictly construed, and in the case of doubt construed in favor of the free use of land, applies only if the covenant is ambiguous. Id .
[¶17] The Plat 701 restriction states that Lot 8 (the Reicherts' lot) "shall have no private use or maintenance responsibility" within the restricted use area and "said private use and maintenance responsibility shall be assigned to [Lot 7 (the Daughertys' lot) ]." We find no ambiguity in these terms.
[¶18] The term "private" means "intended for or restricted to the use of a particular person, group, or class." Merriam-Webster's Collegiate Dictionary 988 (11th ed. 2012). "Use" means "the legal enjoyment of property that consists in its employment, occupation, exercise, or practice (she had the use of the estate for life)." Id . at 1378. "Maintenance" means "the upkeep of property or equipment." Id . at 749. These definitions are not indefinite and do not leave room for multiple meanings, and the restriction's plain meaning is clear. The Daughertys are entitled to the exclusive use of the restricted use area on Lot 8, and they are responsible for its upkeep. Conversely, the Reicherts are entitled to no use of the restricted use area, including for the storage of plowed snow, and they are entirely relieved of maintenance responsibility for that portion of Lot 8.
[¶19] The Plat 701 restriction creates a clear burden on Lot 8, with a clear benefit to Lot 7, and is thus an enforceable covenant. Moreover, the covenant is not rendered illusory by its failure to specifically delineate permitted uses and required maintenance. An illusory promise is one that makes performance entirely optional. Jackson Hole Builders v. Piros , 654 P.2d 120, 122 (Wyo. 1982). The owner of Lot 7 is required to maintain the Lot 8 restricted use area, and nothing in the language of Plat 701 suggests that obligation is optional.
[¶20] The true gist of the Reicherts' argument, we believe, is that the language is too vague to allow enforcement of any restrictions on or requirements for the use and maintenance of the disputed property. Certainly, we have recognized that a contract or *996 servitude may be so vague as to be unenforceable. Thornock v. Esterholdt , 2013 WY 42, ¶ 18, 299 P.3d 68, 73 (Wyo. 2013) (citing contract cases and applying rule to right-of-way). We do not, however, find that to be the case here. The disputed property is in a subdivision governed by recorded covenants and restrictions. Those restrictions and the same county, state, and federal restrictions applicable to the other subdivision lots will govern the use and maintenance of the disputed property. The uses and maintenance responsibilities are thus neither boundless nor without guidance. The Plat 701 restriction therefore does not fail for lack of definition.
2. Proportionality of Burdens and Benefits
[¶21] The Reicherts next argue that the district court erred in failing to consider parol evidence to determine the proportionality of the burden the Plat 701 restriction imposes on Lot 8 as compared to the benefit it confers on Lot 7. In support of this argument, they cite to a provision of the Restatement (First) of Property that instructs:
Free alienability of land is socially desirable. The running of the burden of a promise with land tends to interfere with the free alienability of the land and thus in a socially undesirable direction. Accordingly it is only permitted where this tendency is counterbalanced by an opposing tendency. This opposing tendency is found in the benefit required as a prerequisite to the running of the burden. The use promoted by the benefit received offsets the uses inhibited by the burden imposed. The benefit need not exactly equal the burden [in] individual cases. If some land is benefited by the performance of a promise imposing a burden upon either the same or other land no exact determination of the equivalency of benefit and burden is made in determining that the promise so affects land as to run with it. Still the burden will not run if the burden imposed is obviously greater than the benefit given. There must be such a relation between benefit and burden that the performance of the promise has, in the particular case, some reasonable prospect of promoting land utilization as a whole.
Restatement (First) of Property § 537 cmt. h (1944) (June 2018 update).
[¶22] The Reicherts contend that without consideration of parol evidence, the ambiguity of the terms "private use" and "maintenance" makes it impossible to perform the above-quoted task of measuring the proportionality of the burden imposed and benefit conferred by the Plat 701 restriction. We decline to consider this argument.
[¶23] The Restatement provision on which the Reicherts rely is not one this Court has had a prior occasion to consider, but more importantly, we are unable to find any indication in the record that this argument was made to the district court or even that the Reicherts asked the district court to consider the cited Restatement provision. "Our precedent is clear that an argument may not be made for the first time on appeal." Davis v. State , 2018 WY 40, ¶ 32, 415 P.3d 666, 678 (Wyo. 2018) (quoting Gumpel , ¶ 32 n.7, 393 P.3d at 1291 n.7 ).
"Parties are bound by the theories they advanced below." Davis v. City of Cheyenne , 2004 WY 43, ¶ 26, 88 P.3d 481, 490 (Wyo. 2004). "We recognize only two exceptions to that rule: when the issue raises jurisdictional questions or it is of such a fundamental nature that it must be considered." Id .
Davis , ¶ 32, 415 P.3d at 678.
[¶24] The Reicherts' argument is plainly not jurisdictional. Additionally, we do not view a request for application of a Restatement principle not previously accepted by this Court as fundamental. That is particularly so where, as here, that had the argument and authority been presented to the district court, the parties could have properly developed the record for consideration of it. Davis , ¶ 34, 415 P.3d at 678 (quoting Crofts v. State ex rel. Dep't of Game and Fish , 2016 WY 4, ¶ 24, 367 P.3d 619, 625 (Wyo. 2016) ) (noting Court will not consider issue "not properly developed for review.").
[¶25] The Reicherts' argument is newly raised on appeal, and no record was developed *997 to support our consideration of it. We therefore decline to consider the argument.
3. Public Policy Arguments
[¶26] The Reicherts next contend that the Plat 701 restriction is unenforceable because it violates public policy. Specifically, they point out that Wyoming is a "fence-out" state, and they argue that because the restriction bars them from fencing their property, they are unable to fence out the Daughertys' livestock to prevent livestock damage to their property. They further contend that, contrary to public policy, they are unable to place survey markers on their property within the restricted use area.
[¶27] Wyoming is indeed a fence-out state, meaning the onus is on a property owner to fence out livestock to prevent damage rather than on the livestock owner to fence in the livestock. Braunstein v. Robinson Family Ltd. P'ship LLP , 2010 WY 26, ¶ 18, 226 P.3d 826, 834 (Wyo. 2010). That said, the Reicherts cite no authority for their assertion that a covenant restricting a property owner from fencing a portion of their property is contrary to public policy. Additionally, the livestock damage that the Reicherts cited in support of their challenge to the Plat 701 restriction was not damage done to the disputed property. The damage occurred when one of the Daughertys' pigs apparently crossed Juniper Lane, entered the Reicherts' garage, and caused damage. While a fence across the disputed property may have prevented the breach, nothing in the Plat 701 restriction prevents the Reicherts from fencing the larger portion of their property that is not part of the restricted use area.[2] We are therefore not persuaded that the restriction is contrary to public policy.
[¶28] With respect to the Reicherts' argument that the Plat 701 restriction interferes with their ability to stake their property, they cite only to Wyo. Stat. Ann. § 6-3-202, which establishes the penalty for altering landmarks. Nothing in the record addresses what may or may not have occurred to date with respect to any attempts by the Reicherts to survey and stake their property, and they cite no other authority and make no cogent argument as to why this question implicates public policy or otherwise affects the enforceability of the Plat 701 restriction. We therefore do not address the argument any further. See Bruckner v. State , 2018 WY 51, ¶ 17, 417 P.3d 178, 182 (Wyo. 2018) ("The Court has a long-standing precedent of summarily affirming cases or issues not supported by cogent argument or pertinent authoritative citation.").
4. Conflicts with Access Easement
[¶29] The Reicherts last contend that the Plat 701 restriction conflicts with the Watkins Easement, the access easement that allowed for the location of Juniper Lane. They assert that under the Watkins Easement, Juniper Lane may be located within any portion of the easement, including within at least part of the restricted use area, and that the easement carries with it the right and obligation of all lot owners to maintain Juniper Lane. They argue the easement and restriction are therefore in conflict because they simultaneously grant all lot owners access to the restricted area across which the easement runs, while also granting Lot 7's owner exclusive access to the same area. We disagree.
[¶30] The rights and obligations of the subdivision lot owners with respect to Juniper Lane are not before the Court in this matter, and we make no rulings with respect thereto. Assuming arguendo that the Reicherts are correct concerning where the lane may be located and the lot owners' rights and obligations with respect to the lane, we still find no inherent conflict between the Plat 701 restriction and the Watkins Easement. The plat's restriction defines the restricted use area as "that area of the Juniper Lane right-of-way which is located on the northwesterly side of the actual Juniper Lane road " (emphasis added). If the actual location of Juniper Road were moved further west, then, by the plat's plain terms, the restricted use area would simply decrease in size. There is therefore no inherent conflict between the terms.
*998 [¶31] Because there is no inherent conflict between the Watkins Easement and the Plat 701 restriction, and the record reveals no actual conflict in the exercise of rights under either, we find no impediment in the Watkins Easement to the enforceability of the Plat 701 restriction.
CONCLUSION
[¶32] The district court correctly concluded that the terms of the Plat 701 restriction were clear and unambiguous and enforceable as a matter of law. Affirmed.

The record is not entirely clear, but it suggests that minimum lot size requirements and topography may have forced this configuration of Lots 6 and 8.

The record does not disclose other fencing restrictions on property in the subdivision. If there are other such restrictions, they are not before this Court and are unaffected by our decision.