# IN THE SUPREME COURT, STATE OF WYOMING

# 2019 WY 103

### OCTOBER TERM, A.D. 2019

### *October 10, 2019*

LITTLE MEDICINE CREEK RANCH, INC.,
a Wyoming corporation, f/k/a BURNETT
RANCH, INC.,

Appellant
(Defendant/Counterclaimant),

v.

SERGE M. D'ELIA and LILIAN C.S.L.
D'ELIA, Trustees of the D'Elia Family Trust
and WAGONHOUND LAND &
LIVESTOCK, LLC, a Wyoming limited
liability company,

Appellees
(Plaintiffs/Counterclaim Defendants).

S-19-0001

*Appeal from the District Court of Albany County*
*The Honorable Tori R.A. Kricken, Judge*

*Representing Appellant:*

David G. Ditto of Associated Legal Group, LLC, Cheyenne, Wyoming; Eric C. Rusnak of K&L Gates LLP, Washington, DC; Michael E. Zeliger and Ranjini Acharya of K&L Gates LLP, Palo Alto, CA. Argument by Ms. Acharya.

*Representing Appellee Serge M. d'Elia and Lilian C.S.L. d' Elia, Trustees of the d'Elia Family Trust:*

Peter C. Nicolaysen and Pamala M. Brondos of Nicolaysen & Associates, P.C., Casper, Wyoming; Keith P. Tyler, Casper, Wyoming. Argument by Mr. Nicolaysen.

*Representing Appellee Wagonhound Land & Livestock Company, LLC:*

> Kermit C. Brown and William L. Hiser of Brown & Hiser, LLC, Laramie, Wyoming. Argument by Mr. Hiser.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN**, Justice.

[¶1]    This is an adverse possession case involving two cattle ranches.  The Appellant, Little Medicine Creek Ranch, Inc., f/k/a Burnett Ranch, Inc., owns a ranch in Albany County that has historically been known as Burnett Ranch.  The Appellees—Serge and Lilian d'Elia, Trustees of the d'Elia Family Trust, and Wagonhound Land & Livestock, LLC—are the most recent owners of Warbonnet Ranch.[1]  The Appellees filed a Complaint for Declaratory Judgment and Petition to Quiet Title with respect to three non-contiguous parcels of property that are deeded to the Appellees but fenced into Burnett Ranch.  The Appellant counterclaimed for adverse possession of those parcels and moved for summary judgment.  The district court denied the Appellant's motion and granted summary judgment to the Appellees.  It also denied the Appellant's subsequent motion to alter or amend its order.  Because genuine issues of material fact preclude summary judgment, we reverse and remand for trial.

## *ISSUES*

[¶2]    The Appellant raises three issues on appeal, rephrased as:

> 1. Does the district court's failure to follow the procedural safeguards of Rule 56(f) necessitate reversal and remand for trial?
>
> 2. Does the district court's improper determination of witness credibility on summary judgment necessitate reversal and remand for trial?
>
> 3. Does the district court's reliance on the absence of objections by the deed holders to find permissive use necessitate reverse and remand for trial?

The Appellees phrase the third issue differently:

> 3. Whether the record and Wyoming law support the District Court's finding of permissive use based on multiple factors including the fence-out doctrine and neighborly accommodation.

---

[1] In 2017, during the course of the litigation, Wagonhound purchased Warbonnet Ranch from the d'Elias.

[¶3]    The dispositive issue is whether genuine issues of material fact preclude summary judgment in favor of the Appellees.[2]

## *FACTS*

## The Land

[¶4]    This fact-intensive adverse possession case involves three non-contiguous parcels of land that are deeded to Warbonnet Ranch's owners but located within Burnett Ranch. Burnett Ranch's perimeter is fenced, except where land characteristics make fencing impossible, but the parcels are not separately fenced within the ranch.  Parcel 1 consists of approximately 640 acres and has also been referred to as "Lindsey Place" and "the peach orchard."  Parcel 2 consists of 40 acres.  Parcel 3 consists of two 120-acre parcels, 210 of which are fenced into Burnett Ranch and subject to this litigation.[3]

[¶5]    The following map depicts the general location of Parcels 1, 2, and 3 within Burnett Ranch:



---

[2] The Appellant does not challenge the district court's denial of its motion for summary judgment.  We therefore do not address that denial in this decision.

[3] The fence runs along the south side of Parcel 3.  Although the two 120-acre parcels have also been referred to separately as Parcels 3 and 4, we refer to them collectively as Parcel 3.

The map does not, however, clearly depict Burnett Ranch's perimeter fence or Burnett Ranch's location relative to Warbonnet Ranch.

## The History

[¶6]  The history of the two ranches and the three families—the Burnetts, the Crosses, and the d'Elias—who have been associated with them over the years provides important background.  The Burnetts' ancestors homesteaded much of the land that constitutes Burnett Ranch.  Richard Burnett managed the ranch for approximately 65 years; Wally Burnett managed the ranch next; and John Burnett became president of Burnett Ranch, Inc. in 2000 and managed it for the next sixteen years.  The Burnetts sold their cattle in 2000 to avoid foreclosure and continuously leased the ranch to various individuals—including Lynn Carter, Jim Hageman, Art Hageman, Warren Manning, and the Crosses—from 2000 until 2016 for grazing.  The leases included use of Parcels 1, 2, and 3.  The Crosses leased the ranch for summer pasture from 2007 or 2008 until 2016.

## The Dispute

[¶7]  Warbonnet Ranch borders Burnett Ranch to the east and north.  The Crosses owned Warbonnet Ranch off-and-on from the 1950s until they sold it to Farm Credit in 1985.  Mr. d'Elia purchased the ranch in 1987 and, a couple of years later, he conveyed it to himself and his wife as Trustees of the d'Elia Family Trust.  Wagonhound purchased Warbonnet Ranch in 2017.

[¶8]  The dispute over Parcels 1, 2, and 3 arose when Wagonhound sought to purchase Burnett Ranch.  When Shane Cross learned of the intended purchase, he asked Wagonhound whether he could continue to lease the ranch if Wagonhound acquired it. Wagonhound indicated that it would not lease the ranch.  As a result, the Crosses sought to purchase Burnett Ranch themselves.  A bidding war ensued and the Burnetts ultimately sold the ranch to the Crosses.  Wagonhound's request to enter Burnett Ranch to survey the parcels and potential access routes to them was subsequently denied.

[¶9]  In February 2017, the Appellees filed a complaint against the Appellant for declaratory judgment and to quiet title to the parcels.[4]  The Appellant answered and counterclaimed for adverse possession of the parcels.  After completing discovery, the Appellant moved for summary judgment on its adverse possession claim.  The Appellees responded with a Joint Statement of Disputed Material Facts pursuant to W.R.C.P. 56.1(b) and a joint traverse in which they argued that: (1) the evidence created a genuine issue of material fact as to the Appellant's claim that its grazing and the Burnett Ranch's fence were sufficient to establish adverse possession, (2) the evidence did not support a finding of

---

[4] The d'Elias added Wagonhound as a Plaintiff, as well as a claim for slander of title, after they conveyed an interest in the disputed property to Wagonhound by Quitclaim Deed.

3

hostile possession or use for the required ten-year period, (3) genuine issues of material fact existed regarding whether use of Parcels 1 and 3 was permissive, and (4) the Appellees were entitled to summary judgment with respect to Parcel 2 because no genuine issue of material fact existed regarding permissive use of that parcel due to a range line agreement.

[¶10]  The court held a hearing on the Appellant's motion in September 2018.  After the hearing, the court issued a notice pursuant to W.R.C.P. 56(f).  The notice stated that, at the hearing, the Appellees sought denial of the Appellant's motion or, in the alternative, summary judgment in their favor pursuant to W.R.C.P. 56(f).  The court allowed the parties time to respond to its notice with additional briefing.

[¶11]  The court ultimately denied the Appellant's motion for summary judgment, granted summary judgment to the Appellees, and quieted title in the Appellees.  It determined that the evidence, even viewed in the Appellant's favor, could not establish a prima facie case for adverse possession of the three parcels.  It reasoned that there was nothing hostile or significant about Burnett Ranch's grazing activity such that it put the owners of those parcels on clear notice that their ownership was in jeopardy, at least not until 2015 to 2016.  It found no evidence that Burnett Ranch purposely drove livestock onto the disputed parcels or utilized the land for the duration of the growing season.  With regard to the fence-out doctrine, it determined that the Warbonnet owners' failure to fence the parcels within Burnett Ranch equated to permission to allow Burnett Ranch's cattle to wander on the unfenced land.  It also determined that Warbonnet Ranch allowed Burnett Ranch to use the parcels as part of a neighborly accommodation.  The court therefore concluded that the Appellant "failed to establish a *prima facie* case of adverse possession" and "[r]ather, judgment as a matter of law in favor of [the Appellees] [wa]s warranted."

[¶12]  The Appellant timely moved to alter or amend the order under W.R.C.P. 59(e) and requested the court vacate its order and grant it summary judgment or hold a trial.  The Appellant argued the court improperly: granted the Appellees summary judgment on the basis that the Appellant did not meet its burden, determined witness credibility, adopted the Appellees' disputed material facts as undisputed, and applied the fence-out doctrine.  It submitted several hundred pages of additional evidence in support of its motion.  The court denied the motion.  This appeal followed.

[¶13]  Additional facts are set forth below as necessary.

## The Law

[¶14]  "Summary judgment is proper only when there are no genuine issues of material fact, and the prevailing party is entitled to judgment as a matter of law." *Mantle v. N. Star Energy & Constr. LLC*, 2019 WY 29, ¶ 110, 437 P.3d 758, 794 (Wyo. 2019) (quoting *Bogdanski v. Budzik*, 2018 WY 7, ¶ 18, 408 P.3d 1156, 1160 (Wyo. 2018)).

4

The party requesting summary judgment bears the initial burden of establishing a prima facie case that no genuine issue of material fact exists and that summary judgment should be granted as a matter of law. W.R.C.P. 56(c); *Throckmartin v. Century 21 Top Realty*, 2010 WY 23, ¶ 12, 226 P.3d 793, 798 (Wyo. 2010). Until the movant has made a prima facie showing that there are no genuine issues of material fact, the nonmovant has no obligation to respond to the motion with materials beyond the pleadings. *Id.*

Once a prima facie showing is made, the burden shifts to the party opposing the motion to present evidence showing that there are genuine issues of material fact. *Boehm v. Cody Cntry. Chamber of Commerce*, 748 P.2d 704, 710 (Wyo. 1987) (citing *England v. Simmons*, 728 P.2d 1137, 1140–41 (Wyo. 1986) ). The party opposing the motion must present specific facts; relying on conclusory statements or mere opinion will not satisfy that burden, nor will relying solely upon allegations and pleadings. *Boehm*, 748 P.2d at 710. However, the facts presented are considered from the vantage point most favorable to the party opposing the motion, and that party is given the benefit of all favorable inferences that may fairly be drawn from the record. [*Union Pacific R. Co. v.*] *Caballo Coal Co.*, ¶ 12, 246 P.3d [867] at 871 [ (Wyo. 2011) ].

*Id.* ¶ 110, 437 P.3d at 794–95 (quoting *Bogdanski*, ¶ 18, 408 P.3d at 1160–61).

[¶15] "This Court affords no deference to the district court's ruling [on a motion for summary judgment], but instead reviews a 'summary judgment in the same light as the district court, using the same materials and following the same standards.'" *Id.* ¶ 110, 437 P.3d at 795 (quoting *Bogdanski*, ¶ 18, 408 P.3d at 1161). When, as here, we review a grant of summary judgment on an adverse possession claim, we apply the summary judgment standard with "more exacting scrutiny" because adverse possession claims are inherently fact-intensive. *White v. Wheeler*, 2017 WY 146, ¶ 15, 406 P.3d 1241, 1246 (Wyo. 2017) (quoting *Braunstein v. Robinson Family Ltd. P'ship*, 2010 WY 26, ¶ 19, 226 P.3d 826, 835 (Wyo. 2010)).

[¶16] "Materiality of a fact depends upon it having some legal significance so that it establishes or refutes some essential element of a cause of action or defense asserted by one of the parties." *Braunstein*, ¶ 16, 226 P.3d at 833 (quoting *Roussalis v. Wyoming Medical Center, Inc.*, 4 P.3d 209, 228 (Wyo. 2000) (internal quotation marks & citations omitted)). Thus, "[i]n any given case, the materiality of any facts is limited by the pertinent legal standard[s] for the asserted claim and for the corresponding defenses to that claim."

*Id.* (quoting *Roussalis*, 4 P.3d at 228 (internal quotation marks & citations omitted)). In this case, the elements required to establish adverse possession and the associated rules determine the materiality of facts. *Id.* ¶ 17, 226 P.3d at 833.

[¶17] To succeed on an adverse possession claim, the claimant "must show actual, open, notorious, exclusive and continuous possession of another's property which is hostile and under claim of right or color of title." *Id.* (quoting *Hillard v. Marshall*, 888 P.2d 1255, 1258 (Wyo. 1995)). Possession must be for the statutory period of ten years. Wyo. Stat. Ann. § 1-3-103 (LexisNexis 2019). An adverse possession claimant cannot succeed if his use of property was permissive. *Braunstein*, ¶ 17, 226 P.3d at 833.

[¶18] In analyzing the claimant's showing, "there is a presumption in favor of the record title holder[.]" *Id.* (quoting *Hillard*, 888 P.2d at 1261). The claimant can rebut that presumption by making a prima facie case of adverse possession. *Id.* (citing *Hillard*, 888 P.2d at 1261). If the claimant makes a prima facie case, then "the burden shifts back to the record title holder who must produce evidence contrary to the presumption by showing that the claimant's possession was permissive." *Id.* (quoting *Hillard*, 888 P.2d at 1261). "If the title holder can do that, then it becomes a question of weight and credibility to be determined by the trier of fact." *Id.* (quoting *Hillard*, 888 P.2d at 1261).

### DISCUSSION

[¶19] In its summary judgment order, the court set forth a single evidentiary analysis,[5] at the end of which it concluded the Appellant "failed to establish a *prima facie* case of adverse possession" and, "[r]ather, judgment as a matter of law in favor of [the Appellees] is warranted." Because the district court acknowledged, but did not independently evaluate, each parties' request for summary judgment, it is difficult to discern whether the court granted the Appellees summary judgment based on the Appellant's deficient prima facie claim, permissive use, or both. The record leads us to conclude that the court granted summary judgment on both grounds, and the parties' arguments put both grounds at issue. We therefore address both grounds, beginning with permissive use, and conclude that genuine issues of material fact preclude summary judgment in favor of the Appellees.[6]

---

[5] The summary judgment order suffers from the same error we identified in *White*: the district court did not separately address the Appellant's motion for summary judgment, viewing the evidence in the light most favorable to the Appellees, and then separately address whether to grant summary judgment to the Appellees, viewing the evidence in the light most favorable to the Appellant. *See White*, ¶ 39 n.5, 406 P.3d at 1251 n.5 (quoting 10A Charles A. Wright et al., *Federal Practice & Procedure Civil* § 2720 (4th ed. database updated April 2017)) (explaining why it is important to consider cross-motions separately).

[6] We do not reach the Appellant's main issue: the sufficiency of the Rule 56(f) notice. We do, however, acknowledge that the notice muddied the waters as to whether the Appellees had moved for summary judgment and on what basis. The uncertainties that resulted from the notice likely could have been avoided if: the court had specified whether it intended to proceed under W.R.C.P. 56(f)(1), (2), or (3); the court had

## I.	*Summary Judgment on the Appellees' Permissive Use Claim*

[¶20] As noted above, an adverse possession claimant cannot succeed if his use of property was permissive. *Braunstein*, ¶ 17, 226 P.3d at 833 (citation omitted). The district court granted the Appellees summary judgment based on (1) neighborly accommodation, and (2) the fence-out doctrine. We conclude the Appellees are not entitled to summary judgment under either doctrine.[7]

### A.	**Neighborly Accommodation**

[¶21] The district court determined that the owners of Warbonnet Ranch allowed the owners and lessees of Burnett Ranch to use the parcels as part of a neighborly accommodation. Viewing the evidence in the light most favorable to the Appellant, and applying our recent precedent, we conclude that genuine issues of material fact preclude summary judgment on neighborly accommodation.

[¶22] In *Galiher v. Johnson*, 2018 WY 145, 432 P.3d 502 (Wyo. 2018) (*Galiher II*), we synthesized the rules regarding neighborly accommodation and elaborated on the distinction between neighbors and strangers under the rule. We unequivocally acknowledged that "a neighborly accommodation should defeat a claim of adverse possession and 'to hold otherwise would be to adjudge that common neighborliness may only be indulged under penalty of encumbering one's property.'" *Galiher II*, ¶ 20, 432 P.3d at 512 (quoting *Gray v. Fitzhugh*, 576 P.2d 88, 90 (Wyo. 1978)). Then we explained that adverse possession disputes between neighbors are different than those involving strangers because of "the special relationship that often exists between neighbors." *Id.* ¶ 21, 432 P.3d at 512 (citing James C. Smith, *Neighboring Property Owner*, § 6:1 (November 2018 update)). Neighbors, unlike strangers, "normally have some sort of social relationship or contact, whether friendly or otherwise. Generally, neighbors treat one another differently because of their status as neighbors." *Id.* Accordingly, "[a] 'neighborly accommodation' simply cannot be assumed—there must be evidence of communication or joint activity which demonstrates such an accommodation." *Id.*

[¶23] Mr. d'Elia initially testified at his deposition that he gave the Burnetts permission to use the disputed property, suggesting that there might have been a neighborly accommodation to use the parcels. However, when counsel questioned him further on the issue, he confirmed that he never communicated such permission to, or even met, the

---

invited the Appellees to file a motion for summary judgment; or the Appellant had requested clarification from the court if it did not understand the notice.

[7] The Appellees argued to the district court that the Burnetts' and their successors' use of Parcel 2 was permissive pursuant to a written agreement contained in the Bureau of Land Management's files. The court acknowledged the agreement in its recitation of the facts but did not further address the agreement in its analysis or find permissive use based on the agreement. What effect, if any, the agreement has on the Appellant's adverse possession claim to Parcel 2 must be addressed at trial.

Burnetts. His testimony clearly raises an issue for the trier of fact as to whether Burnett Ranch ever used the disputed parcels with permission.

[¶24] Because Mr. d'Elia spent limited time on Warbonnet Ranch and delegated management to various individuals over the years, we also consider whether any of those individuals granted the Burnetts or the Burnetts' lessees permission to use the parcels. The record contains no such evidence.

[¶25] John Phillips, who managed Warbonnet Ranch for Mr. d'Elia until about 1991, testified that he was not aware of an agreement regarding the parcels, adding "[o]ther than . . . when we managed it, we would get those cattle down on Burnetts'. And so, essentially, we ran on him. They ran on us. It was no big deal." He confirmed that he had not "sent any written permissions" to Burnett Ranch. Although Farm Credit had some written permissions at some point "when we had the issues of isolated parcels and cabins," he did not remember the details or have a copy of those. He was not otherwise "aware of any written or verbal permission that related to these Parcels 1, 2, or 3."

[¶26] Thomas Spawn, who worked for Warbonnet Ranch from 1991 or 1992 until its sale to Wagonhound in 2017, testified that he never talked with John Burnett about the parcels or explicitly told John Burnett that it was okay to run his cows on Parcels 1, 2, and 3. He never told Mr. d'Elia that the Burnetts, the Crosses, or the Burnetts' lessees were running cattle on the subject property and asked whether that was okay. Mr. Spawn asked Mr. d'Elia whether Mr. d'Elia had a problem with John Burnett using the property before the current lawsuit commenced. When pressed for further details, he explained that, in the 1990s, he told Mr. d'Elia that Burnett and his lessees were using that land and asked if that was okay, but he did not recall anything else about that conversation and stated that he did not have any discussions with Mr. d'Elia about those parcels in the last 15 years. Mr. Spawn never had any discussions with Mr. Burnett about using Parcels 1, 2, and 3 and never told Mr. Burnett he was welcome to use those parcels.

[¶27] As far as individuals associated with Burnett Ranch, John Burnett—who became president of Burnett Ranch, Inc. in 2000, and actively managed the ranch until its sale in 2016—testified that he had minor conversations with Mr. d'Elia a couple of times but that was the extent of their relationship. They did not talk about the parcels. When counsel asked John Burnett if there was "ever any discussion between Tom Spawn or anybody from Warbonnet about permission to use any of the Parcels 1, 2, or 3," he responded: "No." He testified that neither Mr. d'Elia nor anyone else granted him or anyone else associated with Burnett Ranch permission to use Parcels 1, 2, or 3. And Shane Cross, whose family leased Burnett Ranch from 2007 or 2008 until its sale, testified that he was not "aware of any oral agreements for grazing between Richard Cross or Boot Ranch and Burnett Ranch, Inc., John Burnett or Little Medicine Creek Ranch, Inc."

[¶28]  The Appellees point to evidence of "joint activity" between Burnett Ranch and Warbonnet Ranch to support the district court's neighborly accommodation finding.  The evidence to which the Appellees draw our attention generally consists of testimony that individuals from Burnett Ranch and Warbonnet Ranch periodically cooperated with one another to remove their own cattle from the other party's ranch.  We acknowledged in *Galiher II* that evidence of "joint activity" may establish neighborly accommodation. *Galiher II*, ¶ 21, 432 P.3d at 512.  However, the evidence the Appellees rely on, when viewed in the light most favorable to the Appellant, reflects only that the parties were asserting ownership over their own respective cattle and ranches. *Cf. Gray*, 576 P.2d at 90 (relying on a neighborly accommodation to deny an adverse possession claim where the claimants "had constructed a pond and recreational development that traversed the neighbor's irrigation ditches" and the evidence reflected that the parties had an unwritten neighborly agreement to exchange use of certain lands on each other's property).  The record fails to support a ruling on neighborly accommodation as a matter of law.

###   B.      The Fence-out Doctrine

[¶29]  The district court also found permissive use based on the fence-out doctrine.  It reasoned that because "[t]he parcels are not, and never were, separately fenced within the Burnett Ranch," and "Wyoming is a 'fence-out' state," "the decision by the Warbonnet owners to refrain from fencing these lands equates to permission to allow Burnett Ranch cattle to wander [] on the unfenced Warbonnet lands."  We found no evidence that the Warbonnet owners made a conscious decision not to fence the disputed parcels.  In fact, the record on summary judgment contained little, if any, evidence regarding who built or decided not to build fences, when, and for what reason(s).

[¶30]  "Wyoming is indeed a fence-out state, meaning the onus is on a property owner to fence out livestock to prevent damage rather than on the livestock owner to fence in the livestock." *Reichert v. Daugherty*, 2018 WY 103, ¶ 27, 425 P.3d 990, 997 (Wyo. 2018) (citing *Braunstein*, ¶ 18, 226 P.3d at 834).  Under the fence-out doctrine, if a property owner leaves land "unenclosed, and the cattle of others, lawfully at large, wander upon and depasture it, the owner of such cattle will not be guilty of an actionable trespass." *Braunstein*, ¶ 18, 226 P.3d at 834–35 (quoting *Martin v. Platte Valley Sheep Co.*, 12 Wyo. 432, 450–51, 76 P. 571, 574–75 (Wyo. 1904)).  The doctrine does not, however, allow the owner "to wilfully and knowingly drive" his cattle on another person's unenclosed land. *Id.* ¶ 18, 226 P.3d at 834 (quoting *Martin*, 76 P. at 574).

[¶31]  In *Braunstein*, we addressed how the fence-out doctrine fits into the adverse possession framework by outlining a non-exhaustive list of six material facts associated with the adverse possession elements. *Id.* ¶ 18, 226 P.3d at 833–35.  Of relevance to this opinion, the list included "the presence, quality, location, and purpose of fencing," as well

9

as the fence-out doctrine.[8]  *Id.* ¶ 18, 226 P.3d at 834.  "The purpose and type of fencing (for convenience, casual or designed) becomes an important factual issue when an adverse possession claimant uses the disputed property for grazing livestock."  *Id.*

[¶32]   This is especially true when facts regarding the purpose and type of fencing support more than one reasonable inference concerning permissive use.  When the facts support more than one reasonable inference, the fence-out doctrine cannot establish permissive use as a matter of law.  *See White*, ¶¶ 37, 44, 406 P.3d at 1251–52 (because multiple reasonable inferences could be drawn from the presence of the fence, the significance of its "continued presence [had to be] sorted out by a fact-finder at trial, not by a summary judgment ruling.").

[¶33]   As in *White*, the significance of any perimeter fencing around Burnett Ranch and the lack of any fencing around the disputed parcels "must be sorted out by a fact-finder at trial, not by a summary judgment ruling."  *Id.*  The record on summary judgment may support an inference that Warbonnet Ranch allowed Burnett Ranch cattle to roam on the parcels and graze them.  However, another reasonable inference may be drawn from this record: Burnett Ranch fenced-out Warbonnet Ranch and its cattle from Parcels 1, 2, and 3 with the perimeter fence.  These competing inferences prohibit application of the fence-out doctrine to support summary judgment for the Appellees.  *See White*, ¶ 44, 406 P.3d at 1252 (citing *Braunstein*, ¶ 18, 226 P.3d at 834–35).

[¶34]   The Appellees argue this case is analogous to *England v. Ally Ong Hing*, 105 Ariz. 65, 459 P.2d 498 (Ariz. 1969), which we included in a string cite about the fence-out doctrine in *Braunstein*, ¶ 18, 226 P.3d at 835.  Notably, *England* is not on all fours with our precedent analyzing adverse possession solely on the basis of livestock grazing.  *Compare England*, 105 Ariz. at 69, 459 P.2d at 502 (footnote omitted) (holding that "the mere grazing of cattle, absent any other acts of dominion over the land, will not support a claim to land based on adverse possession."), *with Braunstein*, ¶ 18, 226 P.3d at 835 (identifying relevant material facts when "the adverse possession claimant rests its claim on the grazing of livestock on the disputed property").  *England* carries little weight here because of its procedural posture.

[¶35]   In *England*, the Arizona Supreme Court concluded that the owners of a large acreage ranch that was fenced around its exterior boundary, and whose cattle roamed freely and grazed on unfenced mining claims lying within the ranch's exterior fence, were not entitled to adverse possession.[9]  *Id.*, 105 Ariz. at 67–69, 459 P.2d at 500–502.  The Arizona trial

---

[8] The list also included payment of taxes, execution of title instruments, the claimant's statements to others, and claims based on livestock grazing.  *Braunstein*, ¶ 18, 226 P.3d at 833–34.

[9] As a matter of first impression, the court considered "whether one may gain title by adverse possession by the mere grazing and ranging of cattle over unenclosed land."  *England*, 105 Ariz. at 68, 459 P.2d at 501.  Finding Texas authority persuasive, the court held that "the mere grazing of cattle, absent any other

court resolved the plaintiff's adverse possession claim at bench trial, not on summary judgment. *Id.*, 105 Ariz. at 68, 459 P.2d at 501 (noting "[t]he court sitting without a jury found in favor of the defendants"). As a result, the Arizona courts did not have to view the evidence in the light most favorable to the party opposing summary judgment or consider whether multiple reasonable inferences could be drawn from any of the facts, as we must do here. *See White*, ¶¶ 14, 39, 406 P.3d at 1246, 1251. And the Arizona Supreme Court did not subject the trial court's ruling to the same "exacting scrutiny" that we must apply here. *See id.* ¶ 15, 406 P.3d at 1246.

## II.    *Summary Judgment on the Appellant's Prima Facie Claim*

[¶36]   The Appellees requested summary judgment on the Appellant's prima facie claim and the district court granted their request, determining that, even viewing the evidence in the light most favorable to the Appellant, the Appellant could not establish the elements of adverse possession. This is a similar situation to that we addressed in *White*, where we set out in detail why the non-adverse possession claimants were not entitled to summary judgment either based on permissive use or any element of the claimant's prima facie claim. *See White*, ¶¶ 39–65, 406 P.3d at 1251–56. Here, as in *White*, we conclude that the Appellees are not entitled to summary judgment on the Appellant's prima facie claim. In reaching this conclusion, we first address how the district court assessed Shane Cross's testimony. We then briefly demonstrate how genuine issues of material fact on each adverse possession element preclude summary judgment in favor of the Appellees.

[¶37]   In granting the Appellees summary judgment on the Appellant's prima facie claim, the court improperly assessed Shane Cross' testimony. The court found it undisputed that "over the course of decades, the [three] parcels were used by the owners/lessees of the Burnett Ranch for the occasional grazing of cattle, consistent with cattle grazing over the entirety of the Burnett Ranch." It found "no evidence to indicate that these disputed parcels were particularly earmarked for cattle grazing—the cattle simply roamed over and onto these unfenced lands as they wandered through the Burnett Ranch" and "[t]here is little or no water for livestock on the disputed parcels." In a corresponding footnote, the court acknowledged Shane Cross' testimony "that he 'specifically herded stock on that [disputed] parcel,'"[10] but it found his testimony insufficient to create a genuine issue of material fact for two reasons.

[¶38]   The court first concluded he would have herded stock on the disputed parcel "only at some point in time in 2008 or afterwards when the Cross family started leasing the Burnett Ranch for grazing, which is less than the ten-year statutory time requirement."

---

acts of dominion over the land, will not support a claim to land based on adverse possession." *Id.* 105 Ariz at 69, 459 P.2d at 502 (footnote omitted). We have never substantively relied on *England* in an adverse possession case.

[10] Based on our review of Shane Cross' deposition testimony, he was probably referring to Parcel 1 when he made this statement.

This rationale for rejecting Shane Cross' testimony is flawed because the Appellant did not base its adverse possession claim on Shane Cross' testimony alone or intend to rely solely on the time period in which the Crosses leased Burnett Ranch to meet the ten-year requirement.

[¶39] "More importantly," the court determined that, "Mr. Shane Cross is a Wyoming licensed attorney who became intimately involved in this case when he began giving Mr. John Burnett advice about adverse possession[.]" It found Shane Cross' testimony "self-serving" and determined that his testimony contradicted John Burnett's and Jim Burnett's testimony "that cattle simply would roam or wander onto the parcels, as they were contiguous with the rest of the Burnett Ranch."

[¶40] The court's evaluation of Shane Cross' testimony was contrary to the well-settled rule that a court may not weigh credibility on summary judgment. *Downen v. Sinclair Oil Corp.*, 887 P.2d 515, 520 n.3 (Wyo. 1994). Credibility determinations are reserved for trial "because '[i]t is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised.'" *White*, ¶ 51 n.6, 406 P.3d at 1256 n.6 (quoting 10B Charles A. Wright et al., *Federal Practice & Procedure Civil* § 2738 n.42 (4th ed. database updated April 2017)). Any assessment of Shane Cross' testimony thus should have been reserved for trial.[11] It is for the trier of fact to draw inferences from and weigh Mr. Cross' testimony against that of the Burnetts or other witnesses.

[¶41] Not only does Shane Cross's deposition testimony present a genuine issue of material fact regarding actual, open, and notorious possession, the following evidence further precludes summary judgment on this element: evidence that "[a]ll of the Burnett Ranch border is fenced except for a section where the canyon-like terrain makes fencing impossible" and "Burnett Ranch has been responsible for maintaining" the fence; deposition testimony that when Warbonnet cattle made their way onto the ranch through areas that could not be fenced due to the terrain, Burnett Ranch either "kicked their cattle back" or called Warbonnet Ranch to retrieve them; and deposition testimony that beginning in 2000, the Burnetts leased the entire ranch, including Parcels 1, 2, and 3, to various individuals for grazing. *See White*, ¶ 42, 406 P.3d at 1252 (citations omitted) (noting that our precedent makes "clear that enclosing land in a fence may be sufficient to raise the flag of an adverse claim." (internal quotations omitted)); *Near v. Casto*, 613 P.2d 577, 578 (Wyo. 1980) (noting evidence that the Appellants "leased the property to others for ranching purposes" helped satisfy the elements of adverse possession).

---

[11] *See* Steven S. Gensler, 2 Federal Rules of Civil Procedure: Rules and Commentary Rule 56 (Feb. 2019 Update) (citations omitted) (noting that "a court may not reject a nonmoving party's proof on the basis that it is 'uncorroborated' or contradicted by the testimony of all of the other witnesses. If the nonmoving party's evidence would be sufficient if believed, the fact that multiple other witnesses contradict the nonmoving party's story does not lead to the conclusion that no rational jury could ever find for the nonmoving party.").

[¶42] The record further discloses genuine issues of material fact regarding exclusive possession in the deposition testimony of (1) John Burnett; (2) Timothy Weber, who worked for Warbonnet Ranch from approximately March 1994 until Wagonhound purchased Warbonnet Ranch; and, (3) Mr. Spawn, who, as noted above, worked for Warbonnet Ranch from 1991 or 1992 until it sold to Wagonhound in 2017. *See Graybill v. Lampman*, 2014 WY 100, ¶ 33, 332 P.3d 511, 522 (Wyo. 2014); *White*, ¶ 23, 406 P.3d at 1248. Finally, because the Burnetts owned Burnett Ranch for decades and continuously leased the ranch to various individuals beginning in 2000, and because the Appellant purchased the ranch from the Burnetts, the evidence is sufficient to create a genuine issue of material fact as to continuous possession. *See Graybill*, ¶ 38, 332 P.3d at 522.

[¶43] This case again demonstrates why "adverse possession cases . . . are difficult candidates for summary judgment." *See White*, ¶ 66, 406 P.3d at 1256 (citation omitted). As we emphasized in *White*, our decision is not intended to prejudge the parties' claims or the evidence. *Id.* On summary judgment review, the district court's ability to draw inferences from evidence, assign weight to evidence, and assess credibility is limited. *Id.* Those limitations no longer apply to the district court conducting a bench trial. The court is then "free to make credibility determinations, draw inferences, and assign weight to evidence in any manner supported by the record." *Id.*

## CONCLUSION

[¶44] Genuine issues of material fact preclude entry of summary judgment in favor of the Appellees. We therefore reverse the district court's entry of summary judgment in favor of the Appellees and remand for trial.